E. GROENENDYKE, Appellant, v. WALTER H. FOWLER et al., Appellees.

**MUNICIPAL CORPORATIONS:** Use and Regulation of Public Places —Telephone Franchise—''Property Owners'' Defined. The term ''property owners'' in the statute relative to calling elections for the purpose of voting on the granting of telephone and other franchises (Sec. 5905, Code of 1924), embraces owners of personal property, as well as owners of *real* property.

Headnote 1: 28 Cyc. p. 879; 32 Cyc. p. 649.

*Appeal from Marion District Court.*—J. H. APPLEGATE, Judge.

OCTOBER 25, 1927.

An action in equity, to enjoin appellee W. H. Fowler from obstructing the streets, alleys, avenues, and other public places of Pella, Iowa, with certain telephone poles and lines, under claim of franchise which, it is alleged, was void because the proper petition for the election therefor was not obtained and filed. Motion to strike plaintiff's pleading was sustained, and so this appeal was taken.—*Affirmed.*

*Charles W. Lyon* and *Havner, Flick & Powers,* for appellant.

*H. E. De Reus* and *Dick C. Van Zante,* for Fowler, appellee.

*George G. Gaass,* for City of Pella, appellee:

Kindig, J.—By concession of the parties, the scope of this litigation is confined to one proposition. All others are expressly eliminated. The question is, Do the words "property owners," as used in Section 5905 of the Code of 1924, include "owner" of personalty, as well as real estate? If the answer is affirmative, then the action of the district court is right. On the other hand, should it be negative, a reversal must result. Said reference reads as follows:

"No franchise shall be granted, renewed, or extended by any city or town for the use of its streets, highways, avenues, alleys, or public places, for any of the purposes named in the preceding section [telephone wires, poles, and other supports thereof], unless a majority of the legal electors voting thereon vote in favor of the same at a general, city or town, or special election. The council may order the question of the granting, renewal, or extension of any such franchise so submitted; or the mayor shall submit said question to such vote upon the petition of twenty-five property owners of each voting precinct in a city, or fifty property owners in any town."

It is admitted that Pella is a city, under the statutory provisions. There were four voting precincts therein at the time the election was held to grant appellee Walter H. Fowler such right to operate a telephone system within said municipality. Preliminary to the vote on said submission, there was presented, for the consideration of the mayor, a petition containing the names of 113 persons, purporting to be property owners within the four "voting precincts." At least 25 of said individuals were from each said subdivision. Only ten signers are claimed not to be "property owners," as required by said section. However, excluding these, there would result a deficiency in at least two of said districts.

Basis for such disqualification is placed upon the fact that this minority group each owned "personal," but no "real," property. Upon presentation to said city official, it was held that the signatures were sufficient, and accordingly, the election was called, vote taken, and franchise granted. Appellant insists that said officer, in truth, had no petition before him, and was without jurisdiction in the premises, due to the fact that, in the

instances named, holders not of "real," but of "personal,"
property were permitted to sign. His theory is placed upon the
premise that: First, the burden of poles and wires, as well as the
expense thereof, would be upon the land; second, apparent cur-
tailment shown by removal of "ward," as contained in Section
776 of the Code of 1897, and the substitution therefor of "pre-
cinct" in said Section 5905; third, enactments concerning abut-
ting property contained elsewhere in the Code; and fourth, the
reasoning in the case of *Stason v. City of Albia,* 150 Iowa 207,
having to do with severing territory from a city.

These suggestions have their plausibility; but, after careful
deliberation, we are inclined to the view that they are not indi-
cations of the meaning expressed by the law before us. Ambigu-
ity does not exist, and the Code provision is simple, plain, and
clear. Construction, under such circumstances, is not necessary.
*Fry v. Fry,* 125 Iowa 424. *Grimes v. Northwestern Legion of
Honor,* 97 Iowa 315, as a guide for our action, states:

"The words used are unambiguous; are broad, comprehen-
sive, and significant; and the rule commending consideration of
the context is subject to the qualification that, if the meaning of
the words can be found in the section itself, it ought to be there
sought without recourse to anything beyond."

Controlling the required interpretation is the word "prop-
erty." Dictionaries, as well as courts, have given this designa-
tion a well established and definite meaning, respectively, to wit:
First, "The exclusive right to possess, enjoy, and dispose of, a
thing * * *. In a narrower sense, *property* implies exclusive
ownership * * * of things, as where a man owns a piece of land
or a horse; in the broader sense, *property* includes, in the mod-
ern legal systems, practically all valuable rights * * * included
various incorporeal rights, as patents, copyrights, rights of ac-
tion; * * * an estate, whether in lands, goods, money, or intan-
gible rights, such as a copyright, patent rights, etc. * * *"
(Webster's New International Dictionary); and second, "The
term 'property' is said to be *nomen generalissimum,* and to in-
clude everything which is the subject of ownership, corporeal or
incorporeal, tangible or intangible, visible or invisible, real or
personal; everything that has an exchangeable value, or which
goes to make up one's wealth or estate." *Wapsie. P. & L. Com-
pany v. City of Tipton,* 197 Iowa 996.

See, also, *Garver v. Hawkeye Ins. Co.*, 69 Iowa 202. Indulgence must be had in the presumption that the lawmakers, when passing the bill under consideration, were aware of said meaning so universally understood, and conducted themselves within the purview thereof.

But in addition to that probability there is the conclusive actuality embodied in Section 63 of the Code of 1924. Following is the language:

"In the construction of the statutes, the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the general assembly, or repugnant to the context of the statute: * * * The word 'land' and the phrases 'real estate' and 'real property' include lands, tenements, hereditaments, and all rights thereto and interests therein, equitable as well as legal. * * * The words 'personal property' include money, goods, chattels, evidences of debt, and things in action. * * * The word 'property' includes personal and real property."

Judicially declared effect of this is that "property" shall include "personal," as well as "real," unless the contrary is shown. *Mack v. Independent Sch. Dist.*, 200 Iowa 1190; *McLeland v. Marshall County*, 199 Iowa 1232; *Miller v. City of Glenwood*, 188 Iowa 514.

Consistently, when the lawmakers have intended a specific and different import, they have employed suitable expressions. To illustrate, the following sections of the Code of 1924 and the quotations therefrom are examples: 5893, "resident freehold taxpayers of the territory;" 6242, "resident freeholders of the district;" 6199, 5883, and 8182, "resident freehold taxpayers."

After a painstaking research, we have been unable to find that "property," as used in the text discussed, was intended in any way except that which is ordinarily understood thereby, and declared by said Section 63 it shall signify. That construction is not "inconsistent with the manifest intent of the general assembly, or repugnant to the context of the statute." Had said assemblymen, under the previous declaration of their own rules, desired a different implication, they would have so denoted. "Repugnant," as used in said Paragraph 63, is equivalent to disagreement or inconsistency. "Property," containing "personalty," as well as "real," is not in "disagreement" or "incon-

sistent" with said context, for the simple reason that there is nothing therein to intimate the contrary. In fact, there is no such hint at all, except that incorporated in the word "property" itself.

Burdens of a franchise upon real estate may or may not be an argument for the legislatures to consider. Nevertheless, in the case at bar it does not result in proving that they did bring about the outcome sought by appellant, nor does the fact that "ward" was changed to "precinct" show a curtailment on qualification of "signers." More natural is the idea that additional people similarly eligible, as a further safeguard, were required to place their names upon the preliminary writing. "Abutting property," as used in divers statutes, by the very necessity of the occasion and the wording of the legislation, is confined to real estate. No analogy, therefore, exists in that field for our assistance here. *Stason v. City of Albia*, supra, involves Section 622, Code Supplement, 1907, for the severance of territory from the defendant city. Peculiar language of that provision is: "The resident property holders of that part of the territory of such city or town" shall sign a petition. We said that, because of the entire subject-matter, the petitioners must be owners of the territory or lands sought to be severed. This authority is not in point here.

The aim in said Section 5905 was to place initiation in the substantial residents. Measurement to determine this standard was ownership of "property." Forsooth, frequently chattel investments involve thousands of dollars, while land holdings are meager, and vice versa. Essentially, the criterion is reached, no doubt, in one as well as the other.

Until the legislature says otherwise, we are bound, and the judgment of the district court must be, and hereby is, affirmed. —*Affirmed*.

EVANS, C. J., and STEVENS, FAVILLE, and WAGNER, JJ., concur.