Deborah DODGE, Appellant,

v.

Jean DURDIN, Granger Durdin, Raymond Durdin, Magic Moments Inc., and Magic Moments Stables, Appellees.

No. 01–04–00015–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 1, 2005.

William V. Wade, William V. Wade & Associates, Houston, for appellant.

Sarah Anne Buzdar Vaughan, Gordon Law Firm, William R. Pilat, Davis Oretsky P.C., Audrey Lewis Juranek, Houston, for appellees.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

ELSA ALCALA, Justice.

Appellant, Deborah Dodge, appeals from a no-evidence summary judgment and traditional summary judgment granted in favor of appellees, Jean Durdin, Granger Durdin, Raymond Durdin, Magic Moments Inc. and Magic Moments Stables. Dodge claims that she sustained an injury when an untamed horse kicked her in the abdomen as she was administering oral deworming medication to the horse pursuant to direction from her employer and supervisor, appellee Granger Durdin. Dodge's first, third and fourth issues on appeal assert that chapter 87 of the Civil Practice and Remedies Code, entitled "Liability Arising from Equine Activities or Livestock Shows" (the Equine Act), violates both the open courts and due course of law guarantees in the Texas Constitution and improperly allows for consideration of contributory fault in violation of section 406.033 of the Labor Code. In her third issue, Dodge asserts that the trial court erred by granting appellees' no-evidence motion for summary judgment because she raised issues of fact on all elements of her cause of action for negligence against appellees. Within her third issue on appeal, Dodge asserts that the Equine Act does not apply to her because she was an employee, rather than a participant in an equine activity, as that term is defined under the act. We sustain Dodge's third issue on appeal and therefore need not address her remaining appellate issues. We hold that the Equine Act applies to consumers and not employees and that Dodge is therefore not a "participant" under the Equine Act. We further hold that Dodge presented more than a scintilla of evidence on every element of her negligence claim and thus raised a genuine issue of material fact as to that claim. Accordingly, we reverse and remand the cause for further proceedings.

## Background

Dodge asserts that appellees, her employers, never warned her of the following: that the horse was not trained, that it previously resided only in a pasture, that it was dangerous, that she should pay close attention to it, that it needed to be handled with care, and that she should be calm around it. Dodge acknowledges that Granger Durdin informed her that the horse "had not been handled much."

At the time of Dodge's injury, appellees did not carry workers' compensation insurance. Dodge's suit alleged common-law negligence by asserting that appellees failed to provide her with a safe place to work, failed to address and care properly for her injuries, failed to warn her of the dangers associated with the horse that injured her, and failed to act as a reasonable and prudent person, business, or both would have acted under the same or similar circumstances. Appellees filed traditional and no-evidence motions for summary judgment, and Dodge responded to the motions. The trial court granted summary judgment for appellees without stating the grounds.

## Standard of Review for Motions for Summary Judgment

We review summary judgments *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). Traditional summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166 a(c). In reviewing a traditional summary judgment, we must indulge every reasonable inference in favor of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts in favor of the nonmovant. *Id.* A defendant who moves for traditional summary judgment on the plaintiff's claims must conclusively disprove at least one element of each of the plaintiff's causes of action. *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex.2004).

On the other hand, after adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim. TEX.R. CIV. P. 166 a(i). The trial court must grant the motion un-less the nonmovant produces summary judgment evidence raising a genuine issue of material fact. *Id.* We review a no-evidence summary judgment by construing the record in the light most favorable to the nonmovant and disregarding all contrary evidence and inferences. *Patriacca v. Frost*, 98 S.W.3d 303, 306 (Tex.App.-Houston [1st Dist.] 2003, no pet.). A trial court improperly renders a no-evidence summary judgment if the nonmovant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *Greathouse v. Alvin Indep. School Dist.*, 17 S.W.3d 419, 423 (Tex.App.-Houston [1st Dist.] 2000, no pet.). More than a scintilla of evidence exists when the evidence "would enable reasonable and fair-minded people to differ in their conclusions." *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex.2003). When, as here, a summary judgment does not specify the grounds on which it was granted, we will affirm the judgment if any one of the theories advanced in the motion is meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

## Applicability of the Equine Act

In their traditional motion for summary judgment, appellees asserted that they are not liable to Dodge under the Equine Act because (1) they are "equine activity sponsors"; (2) Dodge was engaged in "equine activities"; (3) a kick by a horse is "an inherent risk when dealing with equines, such as horses"; and (4) none of the exceptions that would allow appellees to be held liable apply to Dodge. In response, Dodge asserted that the Equine Act is inapplicable to her particular facts because (1) the Equine Act does not pertain to injuries caused to employees during the course and scope of employment, but instead to those participating in hobbies and recreational activities, (2) she does not meet the defini-

tion of "participant" in the Equine Act because she was "neither paying for an equine activity nor participating in such an activity for free, but rather she was simply being paid for her labor," (3) she was not involved in any of the seven behaviors constituting an "equine activity" as defined by the Equine Act, and (4) four of the exceptions that allow for liability under the Act apply to Dodge. Because we have concluded that Dodge is not a participant under the Equine Act, we need not address whether Dodge was involved in an equine activity or whether any exceptions to the Act apply to Dodge.

### A. The Equine Act

The Equine Act established circumstances under which persons protected by the Equine Act are not liable to equine participants for damages resulting from dangers or conditions that are an inherent risk of an equine activity. *See Steeg v. Baskin Family Camps, Inc.,* 124 S.W.3d 633, 636 (Tex.App.-Austin 2003, no pet.). The Equine Act states as follows:

> Except as provided by Section 87.004, any person, including an equine activity sponsor, equine professional, livestock show participant, or livestock show sponsor, is not liable for property damage or damages arising from the personal injury or death *of a participant in an equine activity* or livestock show if the property damage, injury, or death results from the dangers or conditions that are an inherent risk of an equine activity or the showing of an animal on a competitive basis in a livestock show, including:
>
> (1) the propensity of an equine or livestock animal to behave in ways that may result in personal injury or death to a person on or around it;
>
> (2) the unpredictability of an equine or livestock animal's reaction to sound, a

sudden movement, or an unfamiliar object, person, or other animal;

> (3) with respect to equine activities, certain land conditions and hazards, including surface and subsurface conditions;
>
> (4) a collision with another animal or an object; or
>
> (5) the potential of a participant to act in a negligent manner that may contribute to injury to the participant or another, including failing to maintain control over the equine or livestock animal or not acting within the participant's ability.

TEX. CIV. PRAC. & REM.CODE ANN. § 87.003 (Vernon 2005) (emphasis added).

■ A participant "engages in an equine activity" by, among other things, assisting in the medical treatment of an equine animal. § 87.001(1). No court has addressed directly whether employees involved in equine activities are "participants" according to the Equine Act so as to remove any employer liability pursuant to the Labor Code. Accordingly, we determine the issue as a matter of first impression in Texas.

### B. Statutory Construction

Statutory construction is a question of law. *Harris County v. Williams,* 981 S.W.2d 936, 938 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). The cardinal rule of statutory construction is to ascertain the Legislature's intent and to give effect to that intent. *Id.* When determining legislative intent, a court looks to the language of the statute, legislative history, the nature and object to be obtained, and the consequences that would follow from alternate constructions. *Id.;* TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005). We presume that the Legislature intended a construction that makes the statute's result just and reasonable. *Williams,* 981 S.W.2d at 938; TEX. GOV'T CODE ANN. § 311.021(3). If

the statute's language is not ambiguous, we must seek the Legislature's intent in the plain meaning of the words and terms used. *Williams,* 981 S.W.2d at 938. We consider each section and word in connection with the entire statute to ascertain its meaning and promote the statute's purpose. *Id.*

### 1. *The Statutory Language*

Dodge contends that she does not meet the definition of "participant" in the Equine Act because she acted as a paid employee for appellees when she sustained an injury. With respect to an equine activity, the Equine Act defines "participant" as "a person who engages in the [equine] activity, without regard to whether the person is an amateur or professional or whether the person pays for the activity or participates in the activity for free." TEX. CIV. PRAC. & REM.CODE ANN. § 87.001(9) (Vernon 2005). The statute does not state that it is inapplicable to people who are employees paid to work with equine animals. *See id.* However, the preliminary portion of the definition of participant, which refers to "a person who engages in the [equine] activity," is circumscribed by the concluding portion of the sentence, which suggests the term applies to consumers of equine activities. Specifically, the concluding portion states that a person is a "participant" regardless of "whether the person pays for the activity or participates in the activity for free." *Id.* Employees, like Dodge, who are involved in an equine activity neither pay to participate nor participate for free, as consumers do; rather, they are paid by employers for their work. Thus, although the definition of participant in the Equine Act does not expressly exclude an employee such as Dodge, the definition implies that the Equine Act does not apply to her by narrowing the class of "participants" to those who either pay to participate or who participate for free.

Only one court has discussed the definition of "participant" in the Equine Act. *See generally Johnson v. Smith,* 88 S.W.3d 729 (Tex.App.-Corpus Christi 2002, no pet.).[1] In *Johnson,* the court acknowledged that an independent contractor—not an employee—in charge of breeding and handling stallions was a participant under the Equine Act. *Id.* at 731. The appellate issue in that case was whether the Equine Act "applies to public equine operations open to the public for entertainment." *Id.* at 730. The issue before that court, therefore, is not at issue here.[2]

### 2. *Legislative Intent*

Although the legislative history for the Equine Act is limited, we will examine the committee reports to assist our analysis of the Equine Act. Pursuant to the Senate Committee Report, "the tourism industry in Texas has been adversely affected by the expansion of liability as well as charitable, philanthropic and educational organizations." SENATE NATURAL RES. COMM., BILL

---

1. In *Johnson v. Smith,* the court held that the Equine Act applied to limit liability but that fact questions remained as to whether any exceptions applied, specifically, whether the sponsor made a reasonable and prudent effort to determine the ability of the participant to engage safely in the activity and whether the sponsor's conduct rose to the level of willful or wanton disregard of the participant's safety. 88 S.W.3d 729, 733 (Tex.App.-Corpus Christi 2002, no pet.).

2. The only other court that has interpreted the Equine Act addressed whether the injury was due to risks inherent in equine activity and whether any exception to the Equine Act applied. *Steeg v. Baskin Family Camps, Inc.,* 124 S.W.3d 633, 636, 640 (Tex.App.-Austin 2003, no pet.).

ANALYSIS, Tex. H.B. 280, 74th Leg., R.S. (1995). The Senate Report mentions only the tourism industry and is silent about any intent to affect the employer-employee relationship. The legislative history thus suggests that the Legislature enacted the Equine Act to limit the liability of equine sponsors to tourists and other consumers of equine activities.

### 3. Nature and Object of the Equine Act

■ As set forth in the Senate Report, the Equine Act was enacted because of adverse effects on the tourism industry resulting from the expansion of liability for equine activities. The statute as a whole suggests that the nature and object to be obtained by the Equine Act is to protect the tourism industry, not to abrogate the regulation of employer-employee relationships in Texas, as defined in the Labor Code.

### 4. Consequences of Alternate Constructions

If we were to conclude that the Equine Act limits liability of employers to employees, the effect of the Equine Act would be to abrogate well-settled employer duties in Texas under the Labor Code. Employers owe certain nondelegable and continuous duties to employees acting in the course and scope of their duties, including the duties to warn about the hazards of employment, to supervise activities, to furnish a reasonably safe workplace, and to furnish reasonably safe instrumentalities with which to work. *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 754 (Tex.1975); *Southerland v. Kroger Co.*, 961 S.W.2d 471, 472 (Tex.App.-Houston [1st Dist.] 1997, no pet.). The Legislature enacted the Workers' Compensation Act in the Labor Code in response to the needs of workers who, despite escalating industrial accidents, were increasingly being denied recovery.

*Kroger Co. v. Keng,* 23 S.W.3d 347, 349 (Tex.2000). The Act allows injured workers whose employers subscribe to workers' compensation insurance to recover without establishing the employer's fault and without regard to the employee's negligence. *Id.* In exchange, the employees received a lower but more certain recovery than would have been possible under the common law. *Id.* at 350. Since 1913, however, employers have been allowed to opt out of the workers' compensation system, resulting in employees retaining their common-law rights. *See id.* (*citing Tex. Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 511 (Tex.1995)).

To discourage employers from opting out, the Legislature included within the Act a penalty provision, found today at section 406.033 of the Labor Code, that precludes nonsubscribing employers from asserting that employees were contributorily negligent, assumed the risk, or that another employee's negligence caused the employee's injuries. *Kroger,* 23 S.W.3d at 349; TEX. LAB.CODE ANN. § 406.033 (Vernon Supp.2005). Due to the Legislature's expressed intent in enacting section 406.033 to delineate explicitly the structure of an employee's personal injury action against his or her nonsubscribing employer and the policy behind the Workers' Compensation Act to protect employees, the supreme court has held that courts should construe the Workers' Compensation Act liberally in favor of the injured worker. *Kroger,* 23 S.W.3d at 349–51. Moreover, we may not construe a statute in a manner that supplies, by implication, restrictions on an employee's rights not found in section 406.033's plain language. *Id.* at 349. Consequently, without express legislative action, we cannot conclude that by enacting the Equine Act, the Legislature intended to lessen the consequences imposed on employers who choose not to subscribe to workers' compensation insur-

ance. Because the Equine Act does not expressly state an intent to abrogate the Workers' Compensation Act and the Legislature's policy to protect workers, the consequence of including employees among those subject to the Equine Act would be to remove well-settled employer duties under the Labor Code without express, supporting legislative intent.[3]

In summary, although the Equine Act does not specifically exclude employees acting within the course and scope of their employment from the definition of "participant" under the Act, the statutory language specifically encompasses those who pay to participate in the equine activity or who choose to participate for free. Employees neither pay to participate in the equine activity nor participate for free; rather, they are paid for their labor. The purpose of the Equine Act was to limit the liability of those involved in the tourism industry, rather than to limit an employee's right against his or her employer. Further, the Equine Act lacks express legislative intent to abrogate employer duties as delineated in the Workers' Compensation Act. For these reasons, we hold that Dodge, as an employee covered by the Workers' Compensation Act, was not a participant in an equine activity under the Equine Act.

### No–Evidence Motion for Summary Judgment Concerning Negligence Claim

In her third point of error, Dodge contends that she raised issues of fact on all elements of her negligence cause of action. Dodge's response to appellee's no-evidence motion for summary judgment asserted

that the undisputed evidence showed that she was injured while working in the course and scope of her employment for a stable owned and operated by appellees, that she was injured by an untrained horse that kicked her, and that she was not warned about the horse.

■■■ An employer who does not subscribe to workers' compensation insurance coverage is responsible for work-related injuries under common-law negligence principles. Tex. Lab.Code Ann. § 406.033(d) (Vernon Supp.2005). To recover, the plaintiff must prove negligence of the employer, or of an agent or servant of the employer, acting within the general scope of the agent's or servant's employment. Id. To establish negligence, a plaintiff must produce evidence that establishes a duty owed, a breach of that duty, and damages proximately caused by the breach. Southerland, 961 S.W.2d at 472. Although an employer is not an insurer of the employees' safety at work, an employer owes certain nondelegable and continuous duties to employees, including the duties to warn about the hazards of employment, to supervise activities, to furnish a reasonably safe workplace, and to furnish reasonably safe instrumentalities with which to work. Id.; Farley, 529 S.W.2d at 754.

We examine the entire summary judgment record to determine whether Dodge presented more than a scintilla of evidence as to each element of her cause of action to raise a genuine issue of material fact.

### A. Duty

■■■ Appellees contend that Magic Moments only and not the other appellees

---

3. In *Lawrence v. CDB Services., Inc.,* the supreme court held that allowing *voluntary* pre-injury employee elections to participate in nonsubscribing employee benefit plans in lieu of exercising common-law remedies does not violate public policy. 44 S.W.3d 544, 554 (Tex.2001). Here, no evidence in the record suggests that Dodge enrolled in a voluntary occupational insurance plan in consideration for agreeing that such plan constituted the exclusive remedy for her job-related injuries.

employed Dodge and thus that only Magic Moments owed Dodge a duty of care. To prevent summary judgment on whether all appellees owed her a duty of ordinary care, Dodge had to present more than a scintilla of evidence that appellees were Dodge's employers and that Dodge was acting within the course and scope of her employment when she was injured. Although they argued that only Magic Moments Stables and Magic Moments Inc. employed Dodge, they did not offer evidence in support of this contention in their summary judgment motion, in keeping with the assertions of no evidence as to Dodge's negligence claim. In her affidavit in response to the motion for summary judgment, Dodge states the following:

> While employed by one of [sic] more of the named Defendants, it was never explained to me who my actual employer was. I took orders from the Defendant Granger Durdin. I was hired by the Defendant Granger Durdin and the Defendant Jean Durdin. For tax purposes, I ultimately received a W–2 tax form from "Magic Moments" even though this ostensible entity has never been identified with any particularity by any of the five named Defendants in this cause in response to all of my discovery to them. Similarly, in response to my efforts at discovery, I have never been provided with a single piece of paper representing the business records of my "employer" which would identify exactly who my employer was[,] what it was, the type of business, etc.—even though I subpoenaed this information.

Construing this information in the light most favorable to Dodge, we conclude that Dodge produced some evidence that she was employed by appellees. Appellees do not distinguish their individual relationships to Dodge in their motion for summary judgment. This evidence rises to a level that would enable reasonable minds to differ as to who employed Dodge. Further, Dodge stated that she was employed by appellees and that she was applying the deworming paste to the horse pursuant to instructions from her supervisor, Granger Durdin, at the time of the injury. Thus, Dodge presented more than a scintilla of evidence that she was acting within the course and scope of her employment at the time of her injury.

## B. Breach

■ Appellees contend that no evidence exists to support a breach of any duty owed to Dodge. To prevent summary judgment, Dodge had to present more than a scintilla of evidence that appellees breached their duty of care to her. In her affidavit, Dodge repeatedly emphasized that appellees did not warn her about the horse's dangerous propensities. Further, she states that appellees did not provide her with safety instructions or instructions regarding how to administer deworming medication and that appellees did not provide other workers to assist her in handling the animals.

Construing this information in the light most favorable to Dodge, we conclude that Dodge produced more than a scintilla of evidence that appellees breached their duty of care to warn Dodge about the dangerous propensities of the horse and to provide a reasonably safe work place.

## C. Proximate Cause

■ Appellees contend that Dodge did not produce evidence that appellees' breach of any duty owed to Dodge caused her injury. Proximate cause consists of cause-in-fact and foreseeability. *Farley*, 529 S.W.2d at 755. The test for cause-in-fact or "but for" causation is whether the negligent act or omission was a substantial factor in bringing about the injury, without

which the injury would not have occurred. *Excel Corp. v. Apodaca,* 81 S.W.3d 817, 820 (Tex.2002). Foreseeability means that a person of ordinary intelligence would have anticipated the danger his or her negligence created. *Id.*

In her affidavit, Dodge states that since her injury, she has learned that her injury could have been prevented if appellees had taken any of the following precautions: (1) provided other workers to help control the horse, (2) restrained the horse at the time of the accident, (3) hobbled the horse before applying medication, or (4) placed the horse in a narrow loading chute before applying medication. Appellees contend that this sentence is inadmissible because it is not based on personal knowledge. However, in their reply to Dodge's response to the summary judgment, appellees did not specifically object to this statement in Dodge's affidavit and merely generally objected to the affidavit as a whole based on personal knowledge.

Objections to defects in pleadings, whether of form or substance, must be specifically pointed out by exception in writing. Tex.R. Civ. P. 90, 166a(f). Appellees' general objection at the trial level to Dodge's affidavit was not sufficient to preserve error. *Id.*; Tex.R.App. P. 33.1. Although appellees correctly assert that an objection to a defect in the substance of an affidavit may be raised for the first time on appeal, lack of personal knowledge is a defect of form. *Rizkallah v. Conner,* 952 S.W.2d 580, 585 (Tex.App.-Houston [1st Dist.] 1997, no writ). Failure to object at the trial-court level that an affidavit was not based on personal knowledge waives such objection on appeal. *Id.* By not asserting their admissibility objection in the trial court, appellees have thus waived any complaint that Dodge's statement was not based on personal knowledge.

Construing the information in Dodge's affidavit in the light most favorable to her, we conclude that Dodge presented more than a scintilla of evidence regarding cause-in-fact because reasonable minds could differ as to whether warning Dodge about the dangerousness of the horse or taking precautions would have prevented Dodge's injury. We further conclude that some evidence exists that appellees, as stable owners, would have anticipated the danger of failing to warn Dodge or taking precautions to prevent her injury.

### D. Damages

Appellees contend that Dodge did not present evidence to support her claims for loss of earnings and loss of wage earning capacity. We disagree. In her affidavit, Dodge testifies that the horse's kick to her midsection "knocked me backward and to the ground, causing me a great amount of personal injury, physical pain, and mental anguish." Additionally, the summary judgment record shows that Dodge incurred over $4,000 in medical bills as a result of her injury.

We conclude that some evidence exists that Dodge suffered damages resulting from appellees' negligence. Therefore, we hold that Dodge presented more than a scintilla of evidence on every element of negligence.

### Conclusion

We reverse the summary judgment rendered by the trial court and remand the cause for further proceedings.