# IN THE SUPREME COURT OF IOWA

No. 07–1102

Filed June 19, 2009

**ROCKY BAKER,**

    Appellant,

vs.

**JOSHUA SHIELDS** and
**BARTON SHIELDS,**

    Appellees.

---

Appeal from the Iowa District Court for Ringgold County, John D. Lloyd, Judge.


Plaintiff appeals grant of summary judgment to defendants in an action involving domesticated animals. **AFFIRMED.**


Jeff Carter and Matthew Gebhardt of Jeff Carter Law Offices, P.C., Des Moines, for appellant.


Stephen D. Hardy and Arthur Krimsky of Grefe & Sidney, P.L.C., Des Moines, for appellee Barton Shields.

Thomas P. Murphy of Hopkins & Huebner, P.C., Des Moines, for appellee Joshua Shields.

**APPEL, Justice.**

In this case, we must consider whether an immunity provision in Iowa's Domesticated Animal Activities Act bars an injured farm employee from bringing an original action against his employers in the district court. On a motion for summary judgment, the district court determined that the plaintiff's actions were barred. For the reasons expressed below, we affirm.

## I. Factual and Procedural Background.

Viewing the record most favorably to the plaintiff, a reasonable fact finder could conclude the following. Rocky Baker was employed by Joshua Shields as a farm hand. During the course of his employment, Baker performed various tasks for Joshua and for Joshua's father, Barton Shields. Some of the tasks were performed on Joshua's farm, while others occurred on a farm owned by Barton. A reasonable fact finder could conclude that Baker was employed by both Joshua and Barton Shields.

On the date when the injury occurred, Baker was assisting Barton in moving two heifers on Barton's farm. In order to accomplish this task, Barton mounted a two-year-old horse, while Baker mounted an older horse. The two-year-old horse became unruly. Because Baker had successfully ridden the two-year-old a week or two before, Baker and Barton switched horses.

The first time Baker mounted the younger horse it continued to buck and threw itself and Baker onto the ground. When Baker remounted the horse for a second time, it reared up again. Baker then decided to remove a strap that connects the horse's head to his girt, believing such action might improve the two-year-old's disposition. After removing the strap, he again attempted to mount the horse. The third

time, however, was not the charm. The two-year-old reared again, throwing Baker once more to the ground. This time the horse landed on Baker's leg, causing a serious fracture.

Baker sued both Joshua and Barton Shields in district court. In Count I of the multicount petition, Baker alleged that the injury occurred during the course of his employment with Joshua. Baker claimed that neither defendant carried workers' compensation insurance as required by Iowa Code section 87.14A (2003). As a result, Baker claimed under section 87.21 he was entitled to a presumption that the injury was the direct result of his employer's negligence and that the negligence was the proximate cause of his injury. The plaintiff sought damages for past and future pain and suffering, past and future medical expenses, past and future loss of income, past and future loss of function, and for "scarring."

Both defendants filed motions for summary judgment. They relied primarily on the immunity provision of Iowa Code section 673.2, which provides in relevant part:

> A person, including a domesticated animal professional, domesticated animal activity sponsor, the owner of the domesticated animal, or a person exhibiting the domesticated animal, is not liable for damages, injury, or death suffered by a participant or spectator resulting from the inherent risks of a domesticated animal activity.

Iowa Code § 673.2.

Baker resisted. He argued that Iowa Code chapter 673, the Domesticated Animals Activity Act, does not apply to the use of horses in "traditional" farming operations. He also argued that the defendants were not "domesticated animal activity sponsors" under section 673.1(4) and were thus not entitled to immunity.

In the alternative, Baker argued that even if the immunity provisions of section 673.2 applied to farming operations generally,

section 87.21 provides an avenue of escape. Iowa Code section 87.21 provides that in the event an employer fails to provide workers' compensation insurance, an injured employee may bring a claim in district court. In any such claim, the employer is not "permitted to plead or rely upon any defense of the common law. . . ." Iowa Code § 87.21(2).

The district court granted the defendants' motions for summary judgment. The district court held that a horse is a domesticated animal, that riding a horse is domesticated animal activity, and that a horse rearing and falling is an inherent risk of the domesticated animal activity. As such, a participant "who engages in a domesticated animal activity, regardless of whether the person receives compensation" is not entitled to recovery. *Id.* § 673.1(8).

The district court agreed with Baker that the defendants were not "domesticated animal activity sponsors" under section 673.1(4). The district court, however, noted that section 673.2 broadly states that "[a] person . . . is not liable" under the act. According to the district court, the term "person" is broadly defined under section 4.1(20) as an "individual, corporation, limited liability company, government . . . or any other legal entity." The district court thus reasoned that while the legislature wanted to ensure that various groups and individuals were included in the term "person," there was no evidence that the legislature specifically desired to exclude employers from the term.

The district court further concluded that Baker could not avoid application of the immunity provision of section 673.2 through reliance on section 87.21. The district court noted that while section 87.21 expressly does not allow a defendant to raise common-law defenses, it is silent as to the use of statutory defenses. Further, the court noted that the legislature defined a "participant" in the act as including "a person

who engages in a domesticated animal activity, *regardless of whether the person receives compensation*," suggesting application to employee participants. *Id.* § 673.1(8) (emphasis added).

The district court stated that it felt constrained by the explicit language of the statute, even though the outcome was likely a negative and unintended result of the legislative action.

## II. Standard of Review.

We review a district court's ruling on a motion for summary judgment for correction of errors at law. *Berte v. Bode*, 692 N.W.2d 368, 370 (Iowa 2005). Because there are no genuine issues of material fact, this case turns on the proper interpretation of various provisions of Iowa Code chapter 673.

## III. Discussion.

On appeal, the plaintiff reprises his arguments made before the district court. He argues that the legislature could not have intended the immunity provisions of Iowa Code section 673.2 to apply broadly to general farming operations. He notes that the definition of "domesticated animal activity sponsor" provides a laundry list of various clubs, educational institutions, stables, boarding facilities, rides, fairs, breeding farms, and training farms, but does not list farming operations generally. Iowa Code § 673.1(4). He further notes that the term "domesticated animal event" is defined as including a long list of specific public events such as fairs, rodeos, expositions, competitions, 4-H events, and the like. *Id.* § 673.1(5).

Baker argues that these detailed definitions focus on activities involving participation of members of the general public and not traditional farming operations done by employees. As a result, Baker argues that they demonstrate that the legislature did not intend to write

a sweeping statute, but rather a narrowly tailored statute designed to cover nonagricultural domesticated animal activities. In light of this statutory gloss, Baker argues that the compensation referred to in section 673.1(8) refers to prize money or similar payments that may arise from events involving domesticated animals.

In support, the plaintiff cites cases from other jurisdictions. In particular, Baker directs our attention to *Dodge v. Durdin,* 187 S.W.3d 523 (Tex. App. 2005). In *Dodge,* a Texas appellate court considered the meaning of "participant" under a Texas law providing immunity for certain equine activities. *Dodge,* 187 S.W.3d at 527–30. While conceding that the statutory definition of "participant" in *Dodge* is different than under Iowa Code section 673.1(8), Baker suggests that the policy discussion in *Dodge* is germane. In *Dodge,* the appellate court noted that an expansive view of the immunity provision would tend to undercut well-settled employer duties under Texas law. *Id.* at 529. The plaintiff asserts the same is true in Iowa, citing the primacy workers' compensation law as demonstrated by section 85.20, which declares that the rights and remedies provided in chapters 85, 85A, and 85B "shall be the exclusive and only rights and remedies of the employee. . . ." Iowa Code § 85.20.

The defendants counter that the language of the Domesticated Animal Activities Act means exactly what it says it means. *See Auen v. Alcoholic Beverages Div.,* 679 N.W.2d 586, 590 (Iowa 2004). They note that the immunity provision of section 673.2 broadly covers "person[s]."[1]

---

[1]Barton Shields additionally asserts that he is entitled to immunity as the owner of the horse in question. Although there was conflicting evidence as to the horse's ownership before the district court, on appeal Baker acquiesces to Barton's status as owner. Under the clear language of section 673.2, Barton is entitled to immunity based on his ownership of the horse. Nevertheless, we will address all of Baker's claims on appeal, in order to determine the applicability of section 673.2 to Joshua Shields.

The defendants further note that while subsections 673.1(4) and .1(5) provide laundry lists of sponsors and events, these lists are preceded with the phrase "including, but not limited to. . . ." The lists are thus illustrative, not exclusive. As a result, the defendants argue that the legislature clearly intended to provide broader immunity than that advocated by the plaintiff.

In support of their argument, the defendants cite several cases from other jurisdictions. In cases from Colorado and Georgia, equine activity statutes that provided immunity to "an equine activity sponsor, an equine professional, . . . or *any other person*," were held to include the owners of horses. *Culver v. Samuels*, 37 P.3d 535, 536–37 (Colo. Ct. App. 2001) (emphasis in original); *accord Wiederkehr v. Brent*, 548 S.E.2d 402, 403 (Ga. Ct. App. 2001). Similarly, in a Louisiana case, the court held that under a Louisiana equine statute, immunity was provided to a fellow participant where the immunity provision immunized equine activity sponsors, professionals, and "any other person." *Gautreau v. Washington*, 672 So. 2d 262, 265–66 (La. Ct. App. 1996).

In response to Baker's claim that a finding of immunity would undercut Iowa's workers' compensation laws, the defendants assert that Baker could have brought a claim with the Iowa industrial commissioner. The defendants note that when an employer does not have workers' compensation insurance, the injured worker can elect to collect compensation under chapters 85, 85A, 85B, and 86 or bring an original action in district court for damages. Iowa Code § 87.21. Defendants argue that the only claim that is barred by the immunity provision of section 673.2, which prohibits actions for "damages, injury, or death," is an original action brought in district court, not a claim for workers' compensation benefits filed with the industrial commissioner. In any

event, defendants argue that to the extent there is a conflict, the specific statute will ordinarily control over a general statute. *See State ex rel. Holleman v. Stafford*, 584 N.W.2d 242, 246 (Iowa 1998).

We agree with the defendants. The legislature has provided that the term "person" when used in statutes should be broadly construed unless to do so "would be inconsistent with the manifest intent of the general assembly, or repugnant to the context of the statute." Iowa Code § 4.1(20). As a result, the plaintiff can prevail only by demonstrating that the defendants' interpretation is inconsistent with the manifest intention of the legislature or is repugnant to the statute.

The term "manifest intent" when used in statutes providing rules for the construction of legislative acts means clearly apparent or obvious. *Indus. to Indus., Inc. v. Hillsman Modular Molding, Inc.*, 644 N.W.2d 236, 252 (Wis. 2002). In this case, it simply cannot be said that application of the statutory definition of "person" as provided in Iowa Code section 4.1(20) is contrary to the manifest intent of the legislature in enacting chapter 673. The legislature made a deliberate choice to use the term "person," a term which the legislature has broadly defined. Use of such a broad term is not contrary to an apparent or obvious intent of the Domesticated Animal Activities Act.

A reasonable legislature could have intended to provide a broad, blanket immunity to a wide variety of activities involving domesticated animals. There is nothing illogical about this position. The fact that there might be another plausible, narrower legislative intent that might be defeated by a broad definition of "person" does not establish that the broad interpretation is contrary to the manifest, or apparent or obvious, legislative intent. *See State Pub. Defender v. Iowa Dist. Ct.*, 633 N.W.2d 280, 283 (Iowa 2001) (noting that the term "including" is often

interpreted as a term of enlargement, meaning "and" or "in addition to," but it can also be interpreted as a term of limitation). In short, where there are two plausible interpretations of a statute, there is no manifest intent sufficient to override application of the legislative definition of "person" in Iowa Code section 4.1(20).

We also conclude that the application of the broad definition of the term "person" is not *repugnant* in the context of the Domesticated Animals Activities Act. Like "manifest intent," repugnant is a strong term and presents a high hurdle for a party challenging application of a legislatively-established definition. In order to be repugnant to a statute, a definition must be inconsistent, irreconcilable, or in disagreement with the other language of a statute. *Groenendyk v. Fowler*, 204 Iowa 598, 601, 215 N.W. 718, 720 (1927) (disagreement or inconsistent); *Pac. Disc. Co. v. Jackson*, 179 A.2d 745, 747 (N.J. 1962) (irreconcilable conflict).

We generally avoid interpreting a statute in a way that renders portions of it redundant or irrelevant. *Schadendorf v. Snap-On Tools Corp.*, 757 N.W.2d 330, 337 (Iowa 2008). At the same time, however, we must enforce the statute as written, not as it might have been written. *Auen*, 679 N.W.2d at 590. While a broad interpretation of the term "person" may render some of the later language in chapter 673 superfluous, we find that the arguably unnecessary language is a legislative exclamation point designed to ensure immunity to certain types of persons rather than a repugnancy that requires this court to override the general legislative direction in Iowa Code section 4.1(20).

Finally, we disagree with plaintiff's contention that a broad interpretation of the term "person" would defeat application of workers' compensation law to employees involved in domesticated animal activities and that such an interpretation would not have been within the

contemplation of the legislature. Under Iowa Code section 673.1(1), the immunity provision is limited to "claims" which are defined as actions for "damages, injury, or death." A workers' compensation action, however, provides statutory benefits. We conclude that claims for workers' compensation benefits filed with the industrial commissioner are not within the scope of the immunity provision of section 673.2.

As a result, we find the immunity provision of section 673.2 applies to all "persons" involved in a domesticated animal activity, including those arising from traditional farming. The order of the district court granting summary judgment must be affirmed.

**IV. Conclusion.**

For the above expressed reasons, we affirm the district court's grant of the defendants' motions for summary judgment in this case.

**AFFIRMED.**