# IN THE COURT OF APPEALS OF IOWA

No. 22-1365
Filed June 21, 2023

**JERRY WILLIAM VREEMAN,**
    Plaintiff-Appellant,

**vs.**

**CARL JANSMA, MATLOCK FEEDLOT, LLC, JANSMA ENTERPRISES, INC.,
CJ FEEDLOT, LLC,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Sioux County, James N. Daane,

Judge.


A plaintiff appeals the district court order granting summary judgment based

on statutory immunity for domesticated animal activity.  **REVERSED AND**

**REMANDED.**


Stephen F. Avery of Cornwall, Avery, Bjornstad & Scott, Spencer, for

appellant.

Joseph D. Thornton of Smith Peterson Law Firm, LLP, Council Bluffs, for

appellees.


Heard by Bower, C.J., and Vaitheswaran, Tabor, Greer, Schumacher,

Badding, Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

Jerry Vreeman sustained a serious leg injury while attempting to help Carl Jansma get a downed heifer back onto its feet. Vreeman filed a negligence suit against Jansma and his business entities: Matlock Feedlot, LLC, Jansma Enterprises, Inc., and CJ Feedlot, LLC (collectively "Jansma"). Jansma filed a motion for summary judgment, arguing he could not be liable because Iowa Code chapter 673 (2021) provides immunity for domesticated animal activity. The district court agreed and dismissed the case. We reverse and remand for further proceedings.

## I.    *Background Facts and Proceedings.*

Jansma operates a feedlot with approximately 2500 cattle. On January 1, 2020, Jansma discovered a downed heifer in an area where slats are installed. Because the slats lack the strength to support motorized vehicles, he decided to stand the animal up manually. During depositions, Jansma said that his neighbor Vreeman had assisted him in doing so five or six times in the past ten years, while Vreeman recounted assisting Jansma about two or three times. Vreeman further stated that he has encountered a downed heifer in his personal farming operations between five and twenty times in his forty years of experience but he has always used a loader to get the animal upright.

On the day in question, Jansma phoned Vreeman to ask if he could help get the animal back on its feet. Jansma and Vreeman helped each other out with goods and services from time to time but did not have an employment or other formal relationship. Upon arriving at the feedlot, Jansma directed Vreeman to the head of the downed heifer, while Jansma took the rear. The animal weighed

approximately 1300 to 1600 pounds. The two men offered different accounts of how exactly they were going to push the cow into an upright position. In any event, the heifer swung its head around and hit Vreeman before they could be successful, which resulted in serious injury to Vreeman's leg.

In July 2022, the district court held an unreported hearing on Jansma's motion for summary judgment. The court granted the motion and dismissed the case. Vreeman filed a timely appeal.

## II.    Review.

We review the district court's ruling on the defendants' motion for summary judgment for correction of errors at law. *Wermerskirchen v. Canadian Nat'l R.R.*, 955 N.W.2d 822, 827 (Iowa 2021). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. Pro. 1.981(3). Likewise, "[w]hen resolving an appeal from a district court ruling on a summary judgment motion requires us to resolve a legal question involving statutory interpretation, we review the district court ruling on the statutory interpretation question for correction of errors at law." *Homan v. Branstad*, 887 N.W.2d 153, 164 (Iowa 2016).

## III.    Discussion.

Jansma's motion for summary judgment asserted that he is immune from liability for Vreeman's injury under Iowa Code section 673.2, which provides: "A person, including a domesticated animal professional, domesticated animal activity sponsor, the owner of the domesticated animal, or a person exhibiting the

domesticated animal, is not liable for the damages, injury, or death suffered by a participant or spectator resulting from the inherent risks of a domesticated animal activity." Most of the statute's terms are easily applied to the facts at bar:

- As a member of the bovine family, a heifer is a domesticated animal. *See* Iowa Code § 673.1(2).

- Jansma is both a "person" and the owner of the domesticated animal. *See* *Baker v. Shields*, 767 N.W.2d 404, 409 (Iowa 2009) (applying a broad interpretation of the term "person" under section 673.2).

- Whether Vreeman was a "participant" hinges on the definition of "domesticated animal activity," which we address further below. *See* Iowa Code § 673.1(12) ("'Participant' means a person who engages in a domesticated animal activity, regardless of whether the person receives compensation.").

The parties agree there are no genuine issues of material fact relating to the application of chapter 673. *See Gardin v. Long Beach Mortg. Co.*, 661 N.W.2d 193, 196 (Iowa 2003) ("Where the only controversy concerns the legal consequences flowing from undisputed facts, summary judgment is the proper remedy."). Therefore, we turn to Vreeman's legal arguments against conferring immunity to Jansma.

Vreeman argues that Jansma is not entitled to immunity under Iowa Code chapter 673 because standing up a downed heifer is not a "domesticated animal activity." Section 673.1(2) provides:

> "Domesticated animal activity" means any of the following:
> a. Riding or driving a domesticated animal.

b. Riding as a passenger on a vehicle powered by a domesticated animal.

c. Teaching or training a person to ride or drive a domesticated animal or a vehicle powered by a domesticated animal.

d. Participating in an activity sponsored by a domesticated animal activity sponsor.

e. Participating or assisting a participant in a domesticated animal event.

f. Managing or assisting in managing a domesticated animal in a domesticated animal event.

g. Inspecting or assisting an inspection of a domesticated animal for the purpose of purchase.

h. Providing hoof care including, but not limited to, horseshoeing.

i. Providing or assisting in providing veterinary care to a domesticated animal.

j. Boarding or keeping a domesticated animal, by the owner of the domesticated animal or on behalf of another person.

k. Loading, hauling, or transporting a domesticated animal.

l. Breeding domesticated animals.

m. Participating in racing.

n. Showing or displaying a domesticated animal.

We agree that standing up a domesticated animal that is down does not fall under one of these specific categories of domesticated animal activity.[1] We further agree with Vreeman's observation that the statute establishes a finite list of covered activities.[2]

---

[1] Vreeman acknowledges that the closest qualifying language would be section 673.1(3)(k) but argues that getting a downed heifer back on its feet does not fall within the plain meaning of loading, hauling, or transporting. We agree. For his part, Jansma did not identify a specific paragraph under which the activity qualifies in the prior proceedings or appellate briefing but asserted during oral arguments that paragraphs (a), (f), and (j) should apply. We find Jansma's citations were not timely raised and briefed and therefore decline to address this contention. *See State v. Burns*, 988 N.W.2d 352, 361 n.3 (Iowa 2023) ("We generally decline to 'decide or consider arguments raised for the first time during oral argument.'").

[2] The legislature utilized the open-ended phrase "including, but not limited to" in paragraph (h) but chose not to do so when it defined "domesticated animal activity" as "any of the following." *See Sallee v. Stewart*, 827 N.W.2d 128, 142 (Iowa 2013) (finding the legislature created a "closed universe" by employing the phrase "means the following or any combination thereof" in a statutory definition).

The district court acknowledged these issues but felt compelled to extend the definition based on our supreme court's holding in *Baker*, 767 N.W.2d at 409, which found "the immunity provision of section 673.2 applies to all 'persons' involved in a domesticated animal activity, *including those arising from traditional farming*." (Emphasis added.) The key distinction is that the supreme court in *Baker* was tasked with defining the term "person" and did not analyze the definition or breadth of "domesticated animal activity." *See* 767 N.W. 2d at 409. Therefore, we do not read the phrase *including those arising from traditional farming* to expand the definition of "domesticated animal activity" to any and all activities associated with traditional farming. That phrase must be understood in the context of applying a broad definition of the term "person," which resulted in immunity for an activity arising from traditional farming. *See id.* It is true that the parties in *Baker* were attempting to accomplish a similar task as the parties here, but the type of activity and cause of injury were different. In *Baker*, the parties set out with the intention to move two heifers, but Baker was injured when the horse that he was attempting to mount and ride reared and threw him to the ground. *See id.* at 405. Riding a horse falls under the definition of domesticated animal activity, *see* Iowa Code § 673.1(3)(a), whereas getting a heifer onto its feet does not constitute any of the listed activities. Without a triggering activity, we are not in the territory of *Baker* and encounter no conflicts with this precedent.

We note that the bulk of chapter 673 contemplates non-traditional farming activities, such as fairs, rodeos, expositions, competitions, and 4–H events. Therefore, the parties in *Baker* disputed whether section 673.2 intended to confer immunity outside this context. *See* 767 N.W.2d at 407. Although the court found

such immunity exists, it did not go so far as to say that it *always* exists. We cannot write an activity into the definition of "domesticated animal activity." Because getting a downed heifer onto its feet does not fall under the statutory definition of domesticated animal activity, we find Jansma is not immune from liability under chapter 673. Accordingly, we reverse the decision of the district court and remand for further proceedings consistent with this opinion. With this result, we need not address Vreeman's additional arguments against conferring immunity.

**REVERSED AND REMANDED.**