HARRIS COUNTY, Texas, Appellant,

v.

Robert S. WILLIAMS, Appellee.

No. 01–97–01320–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 25, 1998.

Rehearing Overruled Dec. 18, 1998.

Bruce S. Powers, Houston, for Appellant.

Dale Friend, Houston, for Appellee.

Before Justices MIRABAL, O'CONNOR, and NUCHIA.

## OPINION

MICHOL O'CONNOR, Justice.

The issue we address today is one of first impression for a Texas court. We are asked to determine whether a self-insured governmental entity is entitled to subrogation against funds received by a workers' compensation claimant from the Texas Property and Casualty Insurance Guaranty Association. We hold that it is not. We affirm.

### Factual and Procedural Background

Robert Williams, a Harris County constable and the plaintiff below, was seriously injured, while he was issuing a traffic citation, when he was struck by a car towed by a wrecker. Williams received disability payments totaling ABOUT $268,828 from Harris County, and he eventually returned to work. Williams sued the wrecker service and its insurance company, International Underwriter's Insurance Company. Harris County intervened in the lawsuit for workers' compensation subrogation.

When International Underwriter's went into receivership, Williams filed a claim with the Texas Guaranty Fund (the Fund). The

Fund calculated the total settlement value of Williams's damages and subtracted amounts he recovered from other sources (including the payments he received from Harris County). The Fund determined Williams had damages in excess of the Fund's maximum limit of $100,000 and awarded Williams $100,000. The Fund paid Williams and his attorney $100,000, of which Williams received $66,444.70. Although Williams notified Harris County that he would receive compensation from the Fund, Harris County did not assert any subrogation rights against the Fund. Williams did not receive any compensation from the wrecker service or the receiver of International Underwriter's. Williams continued to receive workers' compensation benefits after payment from the Fund.

About three years after the accident, Williams's doctor determined he had a whole body impairment. Williams was awarded impairment benefits. Harris County refused to pay the benefits, asserting that it was taking an offset toward the $100,000 award received by Williams from the Fund. Williams requested a benefit review conference by the Texas Workers' Compensation Commission (TWCC). The benefits review officer found in Williams's favor. A contested case hearing followed, and the contested case hearing officer found in favor of Harris County. A TWCC appeals panel affirmed this decision and determined that Harris County was entitled to subrogation. After all appeals with the TWCC were exhausted, Williams sued in district court to set aside the panel's order. The district court reversed the appeals panel's decision, found that Harris County was not entitled to subrogation against the money received by Williams from the Fund, and ordered Harris County to pay Williams workers' compensation benefits. Harris County appealed.

Harris County presents seven issues, all of which turn on the interpretation of the Texas Property and Casualty Insurance Guaranty Act (the Guaranty Act).

## A. Statutory Construction

■ Statutory construction is a question of law. *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex.1989). The cardinal rule of statutory construction is to ascertain the Legislature's intent and to give effect to that intent. *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex.1994). When determining legislative intent, the court may look to the language of the statute, legislative history, the nature and object to be obtained, and the consequences that would follow from alternate constructions. Tex. Gov't Code § 311.023; *Union Bankers*, 889 S.W.2d at 280; *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex.1991). We presume the Legislature intended a construction that makes the statute's result just and reasonable. Tex. Gov't Code § 311.021(3).

■ If the statute's language is not ambiguous, we must seek the Legislature's intent in the plain meaning of the words and terms used. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 352 (Tex.1990). We, however, will "not decide the scope or meaning of statutory language by a bloodless literalism in which text is viewed as if it had no context." *West Anderson Plaza v. Feyznia*, 876 S.W.2d 528, 532 (Tex.App.-Austin 1994, no writ). Therefore, we avoid statutory interpretations that would produce absurd results. *See Sharp*, 815 S.W.2d at 249. We will consider each section and word in connection with the entire statute to ascertain its meaning and promote the statute's purpose.

## B. Exclusion of Subrogation Claims by the Guaranty Act

■ Ordinarily, a workers' compensation insurance carrier is entitled to subrogation under the Texas Labor Code. Tex. Lab.Code §§ 417.001(b), 417.002. The Labor Code defines an "insurance carrier" to include insurance companies[1] and governmental entities that self-insure, either individually or collectively. *Id.* § 401.011(27). Therefore, nothing in the Labor Code precludes Harris

---

1. The Labor Code defines "insurance company" as "a person authorized and admitted by the Texas Department of Insurance to do insurance business in this state under a certificate of au-

thority that includes authorization to write workers' compensation insurance." *Id.* § 401.011(28).

County from asserting a subrogation claim against the Fund.

We next turn to the question presented here: whether the Guaranty Act defeats Harris County's right to subrogation. The Guaranty Act provides a mechanism to prevent excessive delay in the payment of covered claims under certain insurance policies. Tex. Ins.Code art. 21.28–C, § 2(1); *Scherer v. Texas Property & Cas. Ins. Guar. Ass'n*, 958 S.W.2d 413, 413–14 (Tex.App.-Austin 1997, writ denied). The Guaranty Act also avoids financial loss to claimants or policyholders because of an insurer's impairment. Tex. Ins.Code art. 21.28–C, § 2(2); *Scherer*, 958 S.W.2d at 413–14.

The Guaranty Act defines "covered claim" to mean the following:

> an unpaid claim of an insured or third-party liability claimant that arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Act applies, issued or assumed (whereby an assumption certificate is issued to the insured) by an insurer licensed to do business in this state, if that insurer becomes an impaired insurer and the third-party claimant or liability claimant or insured is a resident of this state at the time of the insured event, or the claim is a first-party claim for damage to property that is permanently located in this state.

Tex. Ins.Code art. 21.28–C, § 5(8).

■ The Guaranty Act excludes from the definition of "covered claim" any amount due any insurer for a subrogation recovery asserted by an insurer to the extent of the liability limits of the policy written and issued to the insured by the insolvent insurer. *Id.* Harris County asserts that the term "insurer" in Section 5(8) does not include self-insured governmental entities. Therefore, Harris County argues, its claim for subrogation is not excluded by the Guaranty Act.

### 1. The Guaranty Act's scope

■ Harris County relies on Section 3(9) of the Guaranty Act, which states that the "Act applies to all kinds of direct insurance," except "any insurance provided by or guaranteed by government." *Id.* § 3(9). We dis-

agree with Harris County's construction of this language.

The phrase "not applicable to ... any insurance provided by or guaranteed by government" refers back to the phrase "under certain insurance policies" in Section 2(1). *See id.* § 2(1) ("The purpose of the Act is to ... provide a mechanism for the payment of covered claims under certain insurance policies...."). The insurance policies to which this language refers are those issued by impaired insurers that issue the types of direct insurance to which the Guaranty Act applies. *See Nunez v. Autry*, 884 S.W.2d 199, 201 (Tex.App.-Austin 1994, no writ) (purpose of Guaranty Act is to provide protection to insureds and liability claimants of impaired insurance companies); *Latter v. Autry*, 853 S.W.2d 836, 837 (Tex.App.-Austin 1993, no writ) (guaranty fund assumes insolvent insurers' obligations). Therefore, Section 3(9) does not support Harris County's contention that the exclusion in the Guaranty Act applies only to for-profit insurance companies.

### 2. Conflict between Guaranty Act and Workers' Compensation Act

■ Harris County contends the Guaranty Act conflicts with its statutory right of subrogation provided by the Texas Workers' Compensation Act (the TWCA). Harris County provides no support for this contention.

If there is a conflict between the Guaranty Act and any other statutory provision relating to the Texas Property and Casualty Insurance Guaranty Association (Association), the Guaranty Act controls, except when the Guaranty Act and the TWCA conflict. Tex. Ins.Code art. 21.28–C, § 25(b)(1). The Guaranty Act's purpose is to provide additional protection to insureds and liability claimants of impaired insurers. *Nunez*, 884 S.W.2d at 201. This purpose would be frustrated if a statutory right of subrogation were allowed to deplete the Fund's resources. Because the Legislature did not exempt statutory subrogation claims from those subrogation claims excluded by the Guaranty Act, we decline to do so.

### 3. Application of the Guaranty Act

 The Guaranty Act does not define "insurer," but defines "member insurer" as any individual, corporation, partnership, association, or voluntary organization that writes any kind of insurance to which the Guaranty Act applies and is licensed to transact insurance in Texas. Tex. Ins.Code art. 21.28–C, § 5(10), (12). The Guaranty Act does not use the term "member insurer" interchangeably with "insurer." The Guaranty Act's use of the phrase "member insurer" is restricted to those entities (1) that constitute the Association's membership, (2) whose employees are among those individuals who sit on the Association's board of directors, (3) that are assessed the funds necessary to pay the Association's obligations, (4) that are subject to the Association's plan of operation, (5) that must provide financial information to the Association, and (6) that are entitled to the immunity provided by the Guaranty Act. *Id.* §§ 6, 7, 8(c), 9(c), 13, 16. The Guaranty Act limits an insured's or third-party liability claimant's right to assert a *covered claim* only to those claims arising from policies issued or assumed by impaired member insurers.[2]

On the other hand, the Guaranty Act does not limit the definition of "reinsurer, insurer, insurance pool, or underwriting association" to an "individual, corporation, partnership, association, or voluntary organization that writes any kind of insurance to which the Act applies and is licensed to transact insurance in Texas." In excluding subrogation claims from the scope of covered claims, the Guaranty Act is broadly worded: a "[c]overed claim shall not include *any* amount ... due *any* reinsurer, insurer, insurance pool, or underwriting association, as subrogation

recoveries...." *Id.* § 5(8) (emphasis added). There is nothing in the Guaranty Act to suggest the Legislature intended to exclude certain insuring entities from the exclusionary language of section 5(8). This is consistent with the Guaranty Act's purpose of providing the injured party with the same recovery he would have received had the responsible insurer remained solvent. *Scherer*, 958 S.W.2d at 414; *Latter*, 853 S.W.2d at 838. Therefore, Harris County's contention that the term "insurer" as used in the Guaranty Act refers only to for-profit insurance companies has no support in the Guaranty Act's language.

 Harris County also relies on the Labor Code, which provides that a joint insurance fund created under the Labor Code is not considered insurance for the purpose of any statute and is not subject to State Board of Insurance rules. *See* Tex. Lab.Code § 504.016(e). Harris County does not cite to any case, and our own research does not reveal any, interpreting Labor Code Section 504.016, subsection (e). However, Harris County refers us to *Coffman v. Scott Wetzel Services, Inc.*, 908 S.W.2d 516, 517 (Tex.App.-Fort Worth 1995, no writ), which held that the Insurance Code does not apply to governmental agencies.[3] In *Coffman*, the appellant appealed a summary judgment in favor of the appellees, who provided claim adjusting services under the City of Colleyville's workers' compensation coverage. The appellant alleged the appellees were an insurance company and owed him a duty of good faith and fair dealing. The appellant asserted the trial court erred in granting the appellees summary judgment because they were insurers for the purposes of the Insurance Code. The court of appeals disagreed and held that the appellees were agents of the Texas Mu-

---

2. An "impaired insurer" means "a member insurer that is placed in temporary or permanent receivership ... [or] in conservatorship...." Ins.Code art. 21.28–C, § 5(9).

3. The *Coffman* court did not explain the reasoning for its holding, but merely cited to *Bridges v. Texas A & M University System*, 790 S.W.2d 831, 834 (Tex.App.—Houston [14th Dist.] 1990, no writ). In *Bridges*, the appellants sought damages from Texas A & M University for unfair settlement practices under article 21.21 of the Texas Insurance Code and the Deceptive Trade Prac-

tices Act. On appeal, the appellants claimed the Legislature waived the University's immunity from suit under the Texas Insurance Code and Deceptive Trade Practices Act because article 21.21 of the Insurance Code defined "person" as any legal entity engaged in the business of insurance. The court held that this broad definition of "person" did not constitute a waiver of the University's immunity from suit because there was no reference in article 21.21 to the State, and the article did not specify its application to state agencies. *Id.*

nicipal League Intergovernmental Risk Pool (the Pool), the Pool was a governmental entity, and the Insurance Code did not apply to governmental entities. *Id.*

The *Coffman* case does not stand for the proposition that the Insurance Code never applies to a benefit plan offered by a governmental entity. *Cf. Boon–Chapman, Inc. v. Tomball Hosp. Auth.,* 941 S.W.2d 383, 384 (Tex.App.—Beaumont 1997, no writ) (reviewing health care coverage plans established by political subdivisions; stating it "does not follow that no aspect of the extensive state statutory and regulatory scheme which regulates the insurance industry applies to governmental medical benefit plans."). Neither *Coffman* nor Labor Code Section 504.106(e) answers the question of whether Harris County is an "insurer" within the scope of the Guaranty Act for the purpose of asserting a subrogation claim against the Fund.

Finally, Harris County refers us to cases from other jurisdictions in which courts have held that a workers' compensation insurance provider's subrogation claim was not excluded under insurance guaranty acts worded substantially similarly to our own. The holdings in these cases do not apply here because they involve either a governmentally created workers' compensation insurance board that was determined not be an "insurer" or insurance guaranty fund statutes that defined "insurer" expressly to exclude workers' compensation insurance providers. *See Beyer's Cement, Inc. v. North Dakota Ins. Guar. Ass'n,* 417 N.W.2d 370 (N.D.1987); *Miles v. Van Meter,* 427 Pa.Super. 278, 628 A.2d 1159 (Pa.Super.Ct.1993); *Washington Ins. Guar. Ass'n v. Department of Labor & Indus.,* 122 Wash.2d 527, 859 P.2d 592 (Wash.1993); *Stamp v. Department of Labor & Indus.,* 122 Wash.2d 536, 859 P.2d 597 (Wash.1993).

In Texas, a political subdivision such as Harris County is required to extend workers' compensation benefits to its employees by becoming a self-insurer, providing insurance under a workers' compensation insurance policy, or entering into an interlocal agreement with other political subdivisions providing for self-insurance. Tex. Lab.Code § 504.011. We will not distinguish between governmental entities that self-insure and those governmental entities that provide workers' compensation coverage under an insurance policy. Nor are we willing to distinguish between self-insured governmental entities and self-insured private employers. We leave that for the Legislature.

We affirm the trial court's judgment.