N.P., Appellant,

v.

The **METHODIST HOSPITAL** and the Methodist Health Care System, Appellees.

No. 01–04–00213–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 5, 2006.

Donna Marie Aversano, Aversano & Associates, Houston, Laura A. Cavaretta, Plunkett & Gibson, Inc., San Antonio, for appellant.

Barbara Radnofsky, Jonathan Lawrence Marsh, Vinson & Elkins, L.L.P., Houston, for appellees.

Panel consists of Chief Justice RADACK and Justices TAFT and ALCALA.

## OPINION

ELSA ALCALA, Justice.

Appellant, N.P., appeals from a traditional summary judgment granted in favor of appellees, The Methodist Hospital (Methodist Hospital) and The Methodist Health Care System (collectively Methodist). In two issues on appeal, N.P. contends that under section 81.003(a) of the Civil Practice and Remedies Code, Meth-

odist is liable for damages caused by its failure to take necessary action to prevent or stop the sexual exploitation of her by its employee, Mark Kennerson, who was her mental-health-services provider and who was known by Methodist to have exploited another patient. In her reply issue, N.P. further contends that, because the trial court granted summary judgment under section 81.003 only, she still has a viable claim for relief for respondeat superior. We hold that the plain language of section 81.003 imposes liability on an employer a of mental-health-services provider for failure to take necessary action to prevent or stop the sexual exploitation of a patient by a mental-health-services provider only when the employer of that provider knew or had reason to know of the sexual exploitation of the same patient by its provider-employee. We further hold that any liability imposed on an employer on the basis of respondeat superior under chapter 81 is set forth within the express parameters of the act and that, by rendering summary judgment pursuant to chapter 81, the trial court therefore disposed of all of N.P.'s claims. Accordingly, we affirm the judgment of the trial court.

## Background

On June 1, 1999, Kennerson was hired as a psychiatric technician to care for psychiatric patients hospitalized at Methodist Hospital. About three months later, a patient at Methodist Hospital, D.R., reported that she had consensual sexual intercourse while she was in a "manic state" with a person who met Kennerson's physical description. As a result of D.R.'s allegation, Methodist began an investigation that included an interview of Kennerson, who denied that he knew D.R. and denied that he had inappropriate contact with any patient. No restrictions were placed on Ken-

nerson's job duties or his access to female patients.

While the investigation was still underway, N.P. was admitted to the psychiatric unit at Methodist Hospital on October 11, 1999. On October 22, 1999, Kennerson was assigned to monitor N.P. for suicide watch. N.P. was lying in bed on her stomach because a nurse had administered rash medication to her buttocks. According to N.P., when Kennerson came into her room at various times that evening, he engaged in a sexually explicit conversation with her, kissed her, rubbed her lower back, ran his hand down toward her female sexual organ, and exposed his erect male sexual organ near her mouth. N.P. reported Kennerson's conduct to Methodist the next day, and Methodist began an internal investigation. Despite N.P.'s allegations, Kennerson was again assigned to 15–minute observations of N.P. on October 25, 1999. N.P., however, did not assert any inappropriate physical contact at any time after the initial contact on October 22, 1999. As a result of its investigation and an investigation by the Texas Department of Health, Methodist terminated Kennerson's employment on November 5, 1999.

N.P. filed this lawsuit on October 17, 2002, a date outside the two-year limitations period for her common law causes of action, but within the three-year limitations period for a cause of action under chapter 81 of the Civil Practice and Remedies Code. The trial court granted Methodist's partial motion for summary judgment for N.P.'s common law causes of action because they were outside the statute of limitations for those claims, and N.P. does not challenge that ruling on appeal. The sole complaint presented in this appeal concerns summary judgment rendered in favor of Methodist on the grounds that section 81.003 of the Civil

Practice and Remedies Code was inapplicable to the facts presented here.

## Standard of Review—Traditional Motion for Summary Judgment

■■■ We review summary judgments de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). Traditional summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). In reviewing a traditional summary judgment, we must indulge every reasonable inference in favor of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts in favor of the nonmovant. *Valence,* 164 S.W.3d at 661. A defendant who moves for traditional summary judgment on the plaintiff's claims must conclusively disprove at least one element of each of the plaintiff's causes of action. *Little v. Tex. Dep't of Criminal Justice,* 148 S.W.3d 374, 381 (Tex.2004).

## Liability for Employer of Mental–Health–Services Provider

The parties dispute whether the liability of an employer under section 81.003 of the Civil Practice and Remedies Code is triggered when a mental-health-service provider exploits only the same patient or when the provider also exploits different patients. Section 81.003 of the Civil Practice and Remedies Code states the following:

> [A]n employer of a mental health services provider is liable to a patient or former patient of the mental health services provider for damages if the patient or former patient is injured as described by section 81.002 and the employer: ... knows or has reason to know that the mental health services provider engaged in sexual exploitation of the patient or former patient and the employer failed to (A) report the suspected sexual exploitation ...; or (B) take necessary action to prevent or stop the sexual exploitation by the mental health services provider.[1]

1. "Mental health services provider" is defined as the following:

   [A]n individual, licensed or unlicensed, who performs or purports to perform mental health services, including a:
   (A) licensed social worker as defined by Section 505.002, Occupations Code;
   (B) chemical dependency counselor as defined by Section 504.001, Occupations Code;
   (C) licensed professional counselor as defined by Section 503.002, Occupations Code;
   (D) licensed marriage and family therapist as defined by Section 502.002, Occupations Code;
   (E) member of the clergy;
   (F) physician who is practicing medicine as defined by Section 151.002, Occupations Code;
   (G) psychologist offering psychological services as defined by Section 501.003, Occupations Code; or
   (H) special officer for mental health assignment certified under Section 1701.404, Occupations Code.
   *Id.* § 81.001(2).
   A "patient" is "an individual who seeks or obtains mental health services." *Id.* § 81.001(3). The act defines a "mental health services" as:
   [A]ssessment, diagnosis, treatment, or counseling in a professional relationship to assist an individual or group in:
   (A) alleviating mental or emotional illness, symptoms, conditions, or disorders, including alcohol or drug addiction;
   (B) understanding conscious or subconscious motivations;
   (C) resolving emotional, attitudinal, or relationship conflicts; or
   (D) modifying feelings, attitudes, or behaviors that interfere with effective emotional, social, or intellectual functioning.
   *Id.* § 81.001(1).

TEX. CIV. PRAC. & REM.CODE ANN. § 81.003 (Vernon 2005). The pertinent portion of Section 81.002 states that

> [a] mental health services provider is liable to a patient or former patient of the mental health services provider for damages for sexual exploitation if the patient or former patient suffers, directly or indirectly, a physical, mental, or emotional injury caused by, resulting from, or arising out of . . . sexual contact between the patient or former patient and the mental health services provider.

*Id.* § 81.002. Under the act, an employer is only liable to the extent that the failure to take action was a proximate and actual cause of damages sustained. *Id.* at § 81.003.

In its motion for summary judgment, Methodist asserted that section 81.003 provides that an employer of a mental-health-services provider is liable only when the mental-health-services provider's sexual exploitation[2] of the patient bringing suit continues after the employer knew or reasonably should have known of the sexual exploitation of the same patient. Methodist argued that because the Legislature used the word "the" in section 81.003(a), rather than the word "a," to refer to "*the* sexual exploitation of *the* patient," the cause of action created by section 81.003 does not apply if the initial sexual exploitation by the mental-health-services provider was of a patient other than the one bringing suit. In response, N.P. argued that the statutory construction urged by Methodist "is contrary to the legislative intent, the plain wording of the statute, rules of construction, and common sense" because

the act was enacted to provide redress for all victims who suffered sexual exploitation from a mental-health-services provider.

No court has directly addressed whether employers of mental-health-services providers are subject to the act when they knew or should have known that an employee sexually exploited one patient and subsequently failed to take necessary action to prevent or stop the sexual exploitation of another patient. The issue thus presents a matter of first impression in Texas.

Statutory construction is a question of law. *Harris County v. Williams*, 981 S.W.2d 936, 938 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). The cardinal rule of statutory construction is to ascertain the Legislature's intent and to give effect to that intent. *Id.* If the statute's language is not ambiguous, we must seek the Legislature's intent in the plain meaning of the words and terms used and not look to extraneous matters for an intent the statute does not state. *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000); *Williams*, 981 S.W.2d at 938. N.P. correctly contends that even when the statute is unambiguous, we may consider, among other things, the statute's objectives, its legislative history, and the consequences of a particular construction. *In re Canales*, 52 S.W.3d 698, 702 (Tex. 2001). However, we may not rely on these considerations to contradict the plain meaning of the statute. *See id.* (holding that plain meaning of statute was supported by legislative history and objectives). N.P. further correctly contends that statutes "shall be liberally construed

---

2. The act defines "sexual exploitation" as:
  [A] pattern, practice, or scheme of conduct, which may include sexual contact, that can reasonably be construed as being for the purposes of sexual arousal or gratification or sexual abuse of any person. The term does not include obtaining information about a patient's sexual history within standard accepted practice while treating a sexual or marital dysfunction.
  *Id.* § 81.001(5).

to achieve their purpose and to promote justice." TEX. GOV'T CODE ANN. § 312.006 (Vernon 2005). Nevertheless, if a statute creates liability unknown at common law, as here, the statute will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview. *Smith v. Sewell,* 858 S.W.2d 350, 354 (Tex.1993).

■■■■ We begin with the plain language of the statute before resorting to the rules of construction because we assume that the Legislature attempted to say what it meant; therefore, the statute's words should be the surest guide to the Legislature's intent. *Segal v. Emmes Capital, L.L.C.,* 155 S.W.3d 267, 286 (Tex. App.-Houston [1st Dist.] 2004, pet. abated). Moreover, we do not confine our review to statutory words, phrases, or clauses in isolation but instead examine the entire act. *Id.* We must give effect to every word and phrase if it is reasonable to do so because we presume the Legislature used every word or phrase intentionally, with a meaning and a purpose. *Abrams v. Jones,* 35 S.W.3d 620, 625 (Tex.2000); *Univ. of Tex. Med. Branch at Galveston v. Hohman,* 6 S.W.3d 767, 776 (Tex App.-Houston [1st Dist.] 1999, pet. dism'd w.o.j.). Generally, we will accept the words used according to their ordinary meaning, unless given a specific statutory definition. *Cities of Austin, Dallas, Fort Worth & Hereford v. S.W. Bell Tel. Co.,* 92 S.W.3d 434, 442 (Tex.2002). We will not give words an exaggerated, forced or constrained meaning. *Id.*

No one disputes that Kennerson was a mental-health-services provider or that Methodist was his employer. Additionally, N.P. has not asserted that Methodist knew or had reason to know that Kennerson exploited her and then did not prevent or stop continued exploitation of her. N.P.'s complaint asserts that Methodist knew or had reason to know that Kennerson exploited *D.R.* and did not prevent or stop Kennerson from exploiting *N.P.* The sole dispute, therefore, concerns whether the exploitation must concern the same patient to trigger liability against Methodist under section 81.003(a).

We start with the plain language of section 81.003(a). *See Segal,* 155 S.W.3d at 286. Only if we find that its plain language is susceptible of two or more reasonable interpretations will we hold that section 81.003(a) is ambiguous. *See id.* The relevant language of the act is found in section 81.003(a), which states, "An employer of a mental-health-services provider is liable to a patient or former patient ... if *the* patient or former patient is injured" resulting from sexual exploitation by the mental-health-services provider. (Emphasis added). Considering each section and word in connection with chapter 81, we conclude that the statute is unambiguous on its face. Therefore, we must construe the statute in light of its plain meaning. Because we must give effect to every word in the statute, we conclude that the Legislature used the word "the" intentionally to refer to one patient. We reach this conclusion because the article "the" before "patient or former patient" relates back to "a patient or former patient" in the first part of the sentence and the Legislature therefore intended that "the patient or former" patient be the same one specified at the beginning of the sentence.

Had the Legislature intended the contrary result, it could have easily repeated the article "a" in the statute, as follows: an employer of a mental-health-services provider is liable to a patient or former patient if *a* patient or former patient is injured resulting from sexual exploitation by the mental-health-services provider. Because we presume that the Legislature

used every word of the act for a purpose, we cannot conclude that the Legislature intended to use a word other than that which it chose to incorporate throughout the act.

■ Throughout chapter 81, the act consistently refers to "the" sexual exploitation of "the" patient or former patient. *See generally* TEX. CIV. PRAC. & REM.CODE ANN. §§ 81.002, 81.003(a)-(b), (d), 81.005. The use of the word "the" throughout the act recognizes that the act applies to only one patient and to only one sexual exploitation. *See Segal,* 155 S.W.3d at 287 (*stating,* "the use of 'the sale' throughout the section [at issue] seems to recognize that only one sale need take place"). Although "the" sexual exploitation refers to more than one act, our analysis is consistent with the statute's reference to "the" sexual exploitation because "sexual exploitation" is defined as "a pattern, practice, or scheme of conduct." TEX. CIV. PRAC. & REM.CODE ANN. § 81.001(5). Therefore, the Legislature specifically created a cause of action for one patient who is a victim of a pattern, practice or scheme of conduct constituting sexual exploitation.

Although we conclude that, by its plain meaning, the act applies to the sexual exploitation of one patient, we may also refer to the act's legislative history in support of our conclusion. *See Nat'l Liability,* 15 S.W.3d at 527. The legislative history suggests that the purpose of the act was to prevent inappropriate sexual relationships between mental health providers and patients. Pursuant to the Background section of the Senate Report, one of the complaints by supporters of the act addressed "inappropriate relationships between mental health professionals and their patients." SENATE HEALTH & HUMAN SERVS. COMM., BILL ANALYSIS, Tex. S.B. 210, 73rd Leg., R.S. (1993). The Senate Report states that "anonymous surveys of [mental health]

professionals indicate that a disturbing number of inappropriate physical and emotional relationships do occur" between mental-health-services providers and their patients. *Id.*

■ The House Daily Floor Report likewise states the following:

Sexual relationships between mental health providers and the patients who entrust themselves in their care is prohibited by codes of ethics adopted by most mental health care professionals. Yet the number of incidences are [sic] growing, and most go unreported. National studies indicate that about 65 percent of therapists surveyed reported that they had treated patients who were sexually involved with their previous therapist. Other studies have shown between five and 17 percent of all male therapists have had sex with their client. SB 210 would ensure that mental health professionals, and anyone who employs mental health professionals, would be responsible for rendered patient care and treatment.

HOUSE RES. ORG., BILL ANALYSIS, Tex. S.B. 210, 73rd Leg., R.S. (1993). As set forth above, sexual exploitation under the act is "a pattern, practice, or scheme of conduct." TEX. CIV. PRAC. & REM.CODE ANN. § 81.001(5). We conclude that the legislative history, which recognizes problematic sexual relationships between mental health providers and their patients, in conjunction with the definition of sexual exploitation, suggest that the Legislature enacted the statute to prevent ongoing sexual relationships between a mental-health-services provider and a particular patient. We further conclude that the act does not apply to a situation, as here, where there was no ongoing sexual exploitation of one patient.

■ Although N.P. has no cause of action against Methodist under chapter 81,

we emphasize that she had common law causes of action that she could have properly brought against Methodist had she filed them before limitations expired.

We conclude that the act does not apply to impose liability upon Methodist under the circumstances presented here.[3]

We overrule N.P. first two issues.

### Applicability of Respondeat Superior

In her reply brief, N.P. contends that, despite the trial court's order on Methodist's motion for summary judgment pursuant to section 81.003, she nonetheless has a viable cause of action for vicarious liability under principles of respondeat superior. N.P. reasons that Methodist's motion was granted only as to N.P.'s claims brought pursuant to section 81.003 and that the summary judgment denied all other grounds asserted in the motion for summary judgment. Appellees contend that N.P. waived her respondeat superior claim by failing to address it in her brief, and, in the alternative, that section 81.003 provides no respondeat superior liability. In her seventh amended petition, N.P. alleges causes of action under chapter 81 and respondeat superior or vicarious liability. Summary judgment had been previously granted in this case on all of N.P.'s common law causes of action based on limitations. Therefore, the only claims on which N.P. could base respondeat superior or vicarious liability were those under chapter 81. In rendering summary judgment pursuant to section 81.003, the trial stated in its judgment, "This is a final and appealable judgment disposing of all claims and all parties."

An issue raised for the first time in a reply brief is ordinarily waived. *Hutchison v. Pharris*, 158 S.W.3d 554, 564 (Tex.App.-Fort Worth 2005, no pet. h.) (*citing Anderson Producing Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 424 (Tex.1996)). It is well established, however, that an appeal may generally be taken only from a final judgment that disposes of all pending parties and claims. *Fresh Coat, Inc. v. Life Forms, Inc.*, 125 S.W.3d 765, 767 (Tex.App.-Houston [1st Dist.] 2003, no pet.). For the judgment to be final and appealable, the intent to finally dispose of the case must be, as here, unequivocally expressed in the words of the judgment itself. *Id.* We must actually look to the record to determine whether a judgment disposes of all pending claims and parties. *Id.* Because N.P.'s issue relates to the finality of the judgment and thus our jurisdiction to hear the appeal, we will address whether N.P. has a viable cause of action for vicarious liability, although N.P. raised the issue for the first time in her reply brief.

The theory of vicarious liability is a judicially created vehicle for enforcing remedies for wrongs committed. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 541 (Tex.2002). Justified on public policy grounds, the theory represents a deliberate allocation of risk. *Id.* The scope and

---

3. N.P. also contends that the act imposes strict liability for an employer's failure to take necessary action to protect a patient from harm. However, strict liability ordinarily does not require a knowledge or intent element, which chapter 81 does. *See State v. Houdaille Indus., Inc.*, 632 S.W.2d 723, 729 (Tex.1982) (*quoting Am. Plant Food Corp. v. State*, 587 S.W.2d 679 (Tex.Crim.App.1979) ("The concept of strict liability is founded on the premise that the mere doing of the act constitutes the offense and the lack of intent 'will not exonerate the party nor does this make the prohibited act any less harmful to society.' ")). Because we hold that the act is inapplicable to the facts presented here, we need not determine whether the act imposes strict liability on employers of mental-health-services providers.

extent of vicarious liability under the common law is clearly a policy determination. *Id.* The most important factor in determining whether vicarious liability is appropriate is whether the person being held responsible can be said to have had a right of control. *Id.* This is best illustrated by the imposition of vicarious liability in the context of the employer-employee relationship under the doctrine of respondeat superior. *Id.*

■■■■■ As set forth above, chapter 81 is a statutorily created cause of action that creates liability for mental-health-services providers in section 81.002 and for employers of mental-health-services providers in section 81.003. The Legislature expressly set forth the specific parameters for chapter 81 causes of action in the plain language of the statute. A statute is presumed to have been enacted by the Legislature with complete knowledge of the existing law and with reference to it. *Acker v. Tex. Water Comm'n,* 790 S.W.2d 299, 301 (Tex.1990). The exclusive remedy against employers under chapter 81 is set forth expressly in section 81.003. Because we presume that the Legislature had complete knowledge of the theories of vicarious liability and respondeat superior when it enacted chapter 81, we may not extend liability beyond its parameters. As written, the act does not encompass vicarious liability beyond any expressly created under section 81.003. Therefore, we conclude that the summary judgment that disposed of N.P.'s chapter 81 claims also disposed of her respondeat-superior claims pursuant to chapter 81.[4]

We overrule N.P.'s reply issue.

4. Although we acknowledge that N.P. is left without any causes of action against Methodist in this case, we note that this decision does not preclude a plaintiff in a similar situation from bringing any available common law causes of action within the two-year limitations period.

### Conclusion

We affirm the judgment of the trial court.