Opinion issued January 5, 2006











In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00213-CV




N.P., Appellant

V.

THE METHODIST HOSPITAL AND 
THE METHODIST HEALTH CARE SYSTEM, Appellees




On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 2002-53670




O P I N I O N
          Appellant, N.P., appeals from a traditional summary judgment granted in favor
of appellees, The Methodist Hospital (Methodist Hospital) and The Methodist Health
Care System (collectively Methodist). In two issues on appeal, N.P. contends that
under section 81.003(a) of the Civil Practice and Remedies Code, Methodist is liable
for damages caused by its failure to take necessary action to prevent or stop the sexual
exploitation of her by its employee, Mark Kennerson, who was her mental-health-services provider and who was known by Methodist to have exploited another patient. 
In her reply issue, N.P. further contends that, because the trial court granted summary
judgment under section 81.003 only, she still has a viable claim for relief for
respondeat superior. We hold that the plain language of section 81.003 imposes
liability on an employer a of mental-health-services provider for failure to take
necessary action to prevent or stop the sexual exploitation of a patient by a mental-health-services provider only when the employer of that provider knew or had reason
to know of the sexual exploitation of the same patient by its provider-employee. We
further hold that any liability imposed on an employer on the basis of respondeat
superior under chapter 81 is set forth within the express parameters of the act and
that, by rendering summary judgment pursuant to chapter 81, the trial court therefore
disposed of all of N.P.’s claims. Accordingly, we affirm the judgment of the trial
court.
Background
          On June 1, 1999, Kennerson was hired as a psychiatric technician to care for
psychiatric patients hospitalized at Methodist Hospital. About three months later, a
patient at Methodist Hospital, D.R., reported that she had consensual sexual
intercourse while she was in a “manic state” with a person who met Kennerson’s
physical description. As a result of D.R.’s allegation, Methodist began an
investigation that included an interview of Kennerson, who denied that he knew D.R.
and denied that he had inappropriate contact with any patient. No restrictions were
placed on Kennerson’s job duties or his access to female patients.
          While the investigation was still underway, N.P. was admitted to the
psychiatric unit at Methodist Hospital on October 11, 1999. On October 22, 1999,
Kennerson was assigned to monitor N.P. for suicide watch. N.P. was lying in bed on
her stomach because a nurse had administered rash medication to her buttocks. 
According to N.P., when Kennerson came into her room at various times that
evening, he engaged in a sexually explicit conversation with her, kissed her, rubbed
her lower back, ran his hand down toward her female sexual organ, and exposed his
erect male sexual organ near her mouth. N.P. reported Kennerson’s conduct to
Methodist the next day, and Methodist began an internal investigation. Despite
N.P.’s allegations, Kennerson was again assigned to 15-minute observations of N.P.
on October 25, 1999. N.P., however, did not assert any inappropriate physical contact
at any time after the initial contact on October 22, 1999. As a result of its
investigation and an investigation by the Texas Department of Health, Methodist
terminated Kennerson’s employment on November 5, 1999. 
          N.P. filed this lawsuit on October 17, 2002, a date outside the two-year
limitations period for her common law causes of action, but within the three-year
limitations period for a cause of action under chapter 81 of the Civil Practice and
Remedies Code. The trial court granted Methodist’s partial motion for summary
judgment for N.P.’s common law causes of action because they were outside the
statute of limitations for those claims, and N.P. does not challenge that ruling on
appeal. The sole complaint presented in this appeal concerns summary judgment
rendered in favor of Methodist on the grounds that section 81.003 of the Civil
Practice and Remedies Code was inapplicable to the facts presented here. 
Standard of Review—Traditional Motion for Summary Judgment
          We review summary judgments de novo. Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). Traditional summary judgment is proper only
when the movant establishes that there is no genuine issue of material fact and that
the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). In
reviewing a traditional summary judgment, we must indulge every reasonable
inference in favor of the nonmovant, take all evidence favorable to the nonmovant as
true, and resolve any doubts in favor of the nonmovant. Valence, 164 S.W.3d at 661. 
A defendant who moves for traditional summary judgment on the plaintiff’s claims
must conclusively disprove at least one element of each of the plaintiff’s causes of
action. Little v. Tex. Dep’t of Criminal Justice, 148 S.W.3d 374, 381 (Tex. 2004). 
 
Liability for Employer of Mental-Health-Services Provider
          The parties dispute whether the liability of an employer under section 81.003
of the Civil Practice and Remedies Code is triggered when a mental-health-service
provider exploits only the same patient or when the provider also exploits different
patients. Section 81.003 of the Civil Practice and Remedies Code states the
following:
[A]n employer of a mental health services provider is liable to a patient
or former patient of the mental health services provider for damages if
the patient or former patient is injured as described by section 81.002
and the employer: . . . knows or has reason to know that the mental
health services provider engaged in sexual exploitation of the patient or
former patient and the employer failed to (A) report the suspected sexual
exploitation . . . ; or (B) take necessary action to prevent or stop the
sexual exploitation by the mental health services provider.



Tex. Civ. Prac. & Rem. Code Ann. § 81.003 (Vernon 2005). The pertinent portion
of Section 81.002 states that 
[a] mental health services provider is liable to a patient or former patient
of the mental health services provider for damages for sexual
exploitation if the patient or former patient suffers, directly or indirectly,
a physical, mental, or emotional injury caused by, resulting from, or
arising out of . . . sexual contact between the patient or former patient
and the mental health services provider.

Id. § 81.002. Under the act, an employer is only liable to the extent that the failure
to take action was a proximate and actual cause of damages sustained. Id. at §
81.003.       

          In its motion for summary judgment, Methodist asserted that section 81.003
provides that an employer of a mental-health-services provider is liable only when the
mental-health-services provider’s sexual exploitation


 of the patient bringing suit
continues after the employer knew or reasonably should have known of the sexual
exploitation of the same patient. Methodist argued that because the Legislature used
the word “the” in section 81.003(a), rather than the word “a,” to refer to “the sexual
exploitation of the patient,” the cause of action created by section 81.003 does not
apply if the initial sexual exploitation by the mental-health-services provider was of
a patient other than the one bringing suit. In response, N.P. argued that the statutory
construction urged by Methodist “is contrary to the legislative intent, the plain
wording of the statute, rules of construction, and common sense” because the act was
enacted to provide redress for all victims who suffered sexual exploitation from a
mental-health-services provider.
          No court has directly addressed whether employers of mental-health-services
providers are subject to the act when they knew or should have known that an
employee sexually exploited one patient and subsequently failed to take necessary
action to prevent or stop the sexual exploitation of another patient. The issue thus
presents a matter of first impression in Texas.
          Statutory construction is a question of law. Harris County v. Williams, 981
S.W.2d 936, 938 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). The cardinal
rule of statutory construction is to ascertain the Legislature’s intent and to give effect
to that intent. Id. If the statute’s language is not ambiguous, we must seek the
Legislature’s intent in the plain meaning of the words and terms used and not look to
extraneous matters for an intent the statute does not state. Nat’l Liab. & Fire Ins. Co.
v. Allen, 15 S.W. 3d 525, 527 (Tex. 2000); Williams, 981 S.W.2d at 938. N.P.
correctly contends that even when the statute is unambiguous, we may consider,
among other things, the statute’s objectives, its legislative history, and the
consequences of a particular construction. In re Canales, 52 S.W.3d 698, 702 (Tex.
2001). However, we may not rely on these considerations to contradict the plain
meaning of the statute. See id. (holding that plain meaning of statute was supported
by legislative history and objectives). N.P. further correctly contends that statutes
“shall be liberally construed to achieve their purpose and to promote justice.” Tex.
Gov’t Code Ann. § 312.006 (Vernon 2005). Nevertheless, if a statute creates
liability unknown at common law, as here, the statute will be strictly construed in the
sense that it will not be extended beyond its plain meaning or applied to cases not
clearly within its purview. Smith v. Sewell, 858 S.W.2d 350, 354 (Tex. 1993). 
          We begin with the plain language of the statute before resorting to the rules of
construction because we assume that the Legislature attempted to say what it meant;
therefore, the statute’s words should be the surest guide to the Legislature’s intent. 
Segal v. Emmes Capital, L.L.C., 155 S.W.3d 267, 286 (Tex. App.—Houston [1st
Dist.] 2004, pet. abated). Moreover, we do not confine our review to statutory words,
phrases, or clauses in isolation but instead examine the entire act. Id. We must give
effect to every word and phrase if it is reasonable to do so because we presume the
Legislature used every word or phrase intentionally, with a meaning and a purpose. 
Abrams v. Jones, 35 S.W.3d 620, 625 (Tex. 2000); Univ. of Tex. Med. Branch at
Galveston v. Hohman, 6 S.W.3d 767, 776 (Tex App.—Houston [1st Dist.] 1999, pet.
dism’d w.o.j.). Generally, we will accept the words used according to their ordinary
meaning, unless given a specific statutory definition. Cities of Austin, Dallas, Fort
Worth & Hereford v. S.W. Bell Tel. Co., 92 S.W.3d 434, 442 (Tex. 2002). We will
not give words an exaggerated, forced or constrained meaning. Id. 
          No one disputes that Kennerson was a mental-health-services provider or that
Methodist was his employer. Additionally, N.P. has not asserted that Methodist knew
or had reason to know that Kennerson exploited her and then did not prevent or stop
continued exploitation of her. N.P.’s complaint asserts that Methodist knew or had
reason to know that Kennerson exploited D.R. and did not prevent or stop Kennerson
from exploiting N.P. The sole dispute, therefore, concerns whether the exploitation
must concern the same patient to trigger liability against Methodist under section
81.003(a). 
          We start with the plain language of section 81.003(a). See Segal, 155 S.W.3d
at 286. Only if we find that its plain language is susceptible of two or more
reasonable interpretations will we hold that section 81.003(a) is ambiguous. See id. 
The relevant language of the act is found in section 81.003(a), which states, “An
employer of a mental-health-services provider is liable to a patient or former patient
. . . if the patient or former patient is injured” resulting from sexual exploitation by
the mental-health-services provider. (Emphasis added). Considering each section
and word in connection with chapter 81, we conclude that the statute is unambiguous
on its face. Therefore, we must construe the statute in light of its plain meaning. 
Because we must give effect to every word in the statute, we conclude that the
Legislature used the word “the” intentionally to refer to one patient. We reach this
conclusion because the article “the” before “patient or former patient” relates back
to “a patient or former patient” in the first part of the sentence and the Legislature
therefore intended that “the patient or former” patient be the same one specified at the
beginning of the sentence.
          Had the Legislature intended the contrary result, it could have easily repeated
the article “a” in the statute, as follows: an employer of a mental-health-services
provider is liable to a patient or former patient if a patient or former patient is injured
resulting from sexual exploitation by the mental-health-services provider. Because
we presume that the Legislature used every word of the act for a purpose, we cannot
conclude that the Legislature intended to use a word other than that which it chose
to incorporate throughout the act.
          Throughout chapter 81, the act consistently refers to “the” sexual exploitation
of “the” patient or former patient. See generally Tex. Civ. Prac. & Rem. Code Ann.
§§ 81.002, 81.003(a)–(b), (d), 81.005. The use of the word “the” throughout the act
recognizes that the act applies to only one patient and to only one sexual exploitation. 
See Segal, 155 S.W.3d at 287 (stating, “the use of ‘the sale’ throughout the section
[at issue] seems to recognize that only one sale need take place”). Although “the”
sexual exploitation refers to more than one act, our analysis is consistent with the
statute’s reference to “the” sexual exploitation because “sexual exploitation” is
defined as “a pattern, practice, or scheme of conduct.” Tex. Civ. Prac. & Rem. Code
Ann. § 81.001(5). Therefore, the Legislature specifically created a cause of action
for one patient who is a victim of a pattern, practice or scheme of conduct constituting
sexual exploitation.
          Although we conclude that, by its plain meaning, the act applies to the sexual
exploitation of one patient, we may also refer to the act’s legislative history in support
of our conclusion. See Nat’l Liability, 15 S.W.3d at 527. The legislative history
suggests that the purpose of the act was to prevent inappropriate sexual relationships
between mental health providers and patients. Pursuant to the Background section
of the Senate Report, one of the complaints by supporters of the act addressed
“inappropriate relationships between mental health professionals and their patients.” 
Senate Health & Human Servs. Comm., Bill Analysis, Tex. S.B. 210, 73rd Leg.,
R.S. (1993). The Senate Report states that “anonymous surveys of [mental health]
professionals indicate that a disturbing number of inappropriate physical and
emotional relationships do occur” between mental-health-services providers and their
patients. Id.
          The House Daily Floor Report likewise states the following:
Sexual relationships between mental health providers and the patients
who entrust themselves in their care is prohibited by codes of ethics
adopted by most mental health care professionals. Yet the number of
incidences are [sic] growing, and most go unreported. National studies
indicate that about 65 percent of therapists surveyed reported that they
had treated patients who were sexually involved with their previous
therapist. Other studies have shown between five and 17 percent of all
male therapists have had sex with their client. SB 210 would ensure that
mental health professionals, and anyone who employs mental health
professionals, would be responsible for rendered patient care and
treatment.

House Res. Org., Bill Analysis, Tex. S.B. 210, 73rd Leg., R.S. (1993). As set
forth above, sexual exploitation under the act is “a pattern, practice, or scheme of
conduct.” Tex. Civ. Prac. & Rem. Code Ann. § 81.001(5). We conclude that the
legislative history, which recognizes problematic sexual relationships between mental
health providers and their patients, in conjunction with the definition of sexual
exploitation, suggest that the Legislature enacted the statute to prevent ongoing
sexual relationships between a mental-health-services provider and a particular
patient. We further conclude that the act does not apply to a situation, as here, where
there was no ongoing sexual exploitation of one patient.
          Although N.P. has no cause of action against Methodist under chapter 81, we
emphasize that she had common law causes of action that she could have properly
brought against Methodist had she filed them before limitations expired.
          We conclude that the act does not apply to impose liability upon Methodist
under the circumstances presented here.



          We overrule N.P. first two issues.
Applicability of Respondeat Superior
          In her reply brief, N.P. contends that, despite the trial court’s order on
Methodist’s motion for summary judgment pursuant to section 81.003, she
nonetheless has a viable cause of action for vicarious liability under principles of
respondeat superior. N.P. reasons that Methodist’s motion was granted only as to
N.P.’s claims brought pursuant to section 81.003 and that the summary judgment
denied all other grounds asserted in the motion for summary judgment. Appellees
contend that N.P. waived her respondeat superior claim by failing to address it in her
brief, and, in the alternative, that section 81.003 provides no respondeat superior
liability. In her seventh amended petition, N.P. alleges causes of action under chapter
81 and respondeat superior or vicarious liability. Summary judgment had been
previously granted in this case on all of N.P.’s common law causes of action based
on limitations. Therefore, the only claims on which N.P. could base respondeat
superior or vicarious liability were those under chapter 81. In rendering summary
judgment pursuant to section 81.003, the trial court stated in its judgment, “This is a
final and appealable judgment disposing of all claims and all parties.”
          An issue raised for the first time in a reply brief is ordinarily waived. 
Hutchison v. Pharris, 158 S.W.3d 554, 564 (Tex. App.—Fort Worth 2005, no pet. h.)
(citing Anderson Producing Inc. v. Koch Oil Co., 929 S.W.2d 416, 424 (Tex. 1996)). 
It is well established, however, that an appeal may generally be taken only from a
final judgment that disposes of all pending parties and claims. Fresh Coat, Inc. v.
Life Forms, Inc., 125 S.W.3d 765, 767 (Tex. App.—Houston [1st Dist.] 2003, no
pet.). For the judgment to be final and appealable, the intent to finally dispose of the
case must be, as here, unequivocally expressed in the words of the judgment itself. 
Id. We must actually look to the record to determine whether a judgment disposes of
all pending claims and parties. Id. Because N.P.’s issue relates to the finality of the
judgment and thus our jurisdiction to hear the appeal, we will address whether N.P.
has a viable cause of action for vicarious liability, although N.P. raised the issue for
the first time in her reply brief.
          The theory of vicarious liability is a judicially created vehicle for enforcing
remedies for wrongs committed. St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 541 (Tex.
2002). Justified on public policy grounds, the theory represents a deliberate
allocation of risk. Id. The scope and extent of vicarious liability under the common
law is clearly a policy determination. Id. The most important factor in determining
whether vicarious liability is appropriate is whether the person being held responsible
can be said to have had a right of control. Id. This is best illustrated by the
imposition of vicarious liability in the context of the employer-employee relationship
under the doctrine of respondeat superior. Id.
          As set forth above, chapter 81 is a statutorily created cause of action that
creates liability for mental-health-services providers in section 81.002 and for
employers of mental-health-services providers in section 81.003. The Legislature
expressly set forth the specific parameters for chapter 81 causes of action in the plain
language of the statute. A statute is presumed to have been enacted by the Legislature
with complete knowledge of the existing law and with reference to it. Acker v. Tex.
Water Comm’n, 790 S.W.2d 299, 301 (Tex. 1990). The exclusive remedy against
employers under chapter 81 is set forth expressly in section 81.003. Because we
presume that the Legislature had complete knowledge of the theories of vicarious
liability and respondeat superior when it enacted chapter 81, we may not extend
liability beyond its parameters. As written, the act does not encompass vicarious
liability beyond any expressly created under section 81.003. Therefore, we conclude
that the summary judgment that disposed of N.P.’s chapter 81 claims also disposed
of her respondeat-superior claims pursuant to chapter 81.



          We overrule N.P’s reply issue.
Conclusion
          We affirm the judgment of the trial court.
 

                                                             Elsa Alcala
                                                             Justice

Panel consists of Chief Justice Radack and Justices Taft and Alcala.