**Opinion issued March 19, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00196-CV

————————————

**MEGA BUILDERS, INC. AND MEGA TEXAS REALTY, INC., Appellants**

**V.**

**AMERICAN DOOR PRODUCTS, INC. D/B/A A.J. MAY, INC., PEARLAND INDUSTRIES AND VERSATEC, Appellee**

On Appeal from the 25th District Court
Colorado County, Texas
Trial Court Case No. 22,708

## MEMORANDUM OPINION

Mega Builders, Inc. and Mega Texas Realty, Inc. contend, in a single issue on appeal, that the trial court erred in granting a traditional summary judgment and a no-evidence summary judgment in favor of American Door Products, Inc. d/b/a

A.J. May, Inc., Pearland Industries and Versatec (ADP) in this construction dispute. We reverse and remand.

## Background

This appeal arises from a dispute over the construction of a Best Western hotel in Columbus, Texas. Mega Texas Realty, the property owner, hired Mega Builders to serve as the general contractor for the hotel's construction. Mega Builders, in turn, contracted with ADP for the provision of doors and related hardware for the hotel. The total contract price for the doors and hardware was $79,722.88. When Mega Builders refused to pay more than $39,946.27 on the contract, ADP filed a lawsuit to recover the $39,776.61 balance.[1]

ADP's petition stated causes of action for breach of contract, sworn account, and promissory estoppel against Mega Builders. Against both Mega Builders and Mega Texas Realty, ADP asserted claims for quantum meruit and misapplication of trust funds. ADP also alleged that Mega Texas Realty was responsible for Mega Builder's obligations under the alter-ego and single-business-enterprise theories of liability. And finally, ADP sought foreclosure of its constitutional and statutory liens and attorney's fees.

---

[1]  ADP's lawsuit named three defendants: Mega Builders, Mega Texas Realty, and Mega Best Western Operations, LLC. The trial court dismissed the claims against Mega Best Western in the final judgment. Only Mega Builders and Mega Texas Realty appealed.

2

Mega Builders and Mega Texas Realty generally denied the allegations in ADP's petition. The companies asserted that no further money was owed under the contract because ADP "failed to perform the work in a good and workmanlike manner" by drilling "holes [for locks] in the doors in the wrong locations causing the locks to malfunction" and that, as a result, Mega Builders had incurred "thousands of dollars in additional costs and damages[.]" Mega Builders also pleaded counterclaims against ADP for breach of contract, breach of the implied warranties of merchantability and fitness, declaratory judgment regarding the validity of ADP's liens, and attorney's fees.

After the lawsuit had been pending for more than one year, ADP filed a combined traditional and no-evidence motion for summary judgment. The motion asserted that ADP had conclusive evidence of two of its own claims—breach of contract and sworn account—and that Mega Builders had no evidence of its contract counterclaim. ADP also requested that, as part of the summary judgment proceedings, the trial court order judicial foreclosure of ADP's liens and award attorney's fees. The trial court granted ADP's motion for summary judgment in all respects. Then, having been awarded all of the relief it requested, ADP moved to dismiss its remaining claims against Mega Builders and Mega Texas Realty and for entry of final judgment.

Pursuant to ADP's motion and in accordance with its summary judgment order, the trial court rendered judgment for ADP and against Mega Builders. The final judgment provided that:

1. . . . [ADP] recover damages from MEGA BUILDERS . . . in the sum of THIRTY NINE THOUSAND SEVEN HUNDRED SEVENTY-SIX AND 61/00 DOLLARS ($39,776.61), post-judgment interest on the total sum at the annual rate of 6%, and costs of Court.

2. . . . [ADP] was granted the right to judicially foreclose its constitutional lien against [Mega Texas Realty's property].

3. . . . [ADP] is awarded judicial foreclosure of its constitutional lien against the legal property above described to collect the judgment for THIRTY NINE THOUSAND SEVEN HUNDRED SEVENTY-SIX AND 61/00 DOLLARS ($39,776.61) in actual damages, its reasonable and necessary attorney's fees, post-judgment interest on the total sum at the annual rate of 6% and costs of Court.

4. In the alternative, [ADP] was granted the foreclosure of its removables lien on materials it provided to MEGA BUILDERS . . . , in use by MEGA REALTY . . . at the property legally described above. . . . [ADP] shall have the right to enter and remove property installed at the above described property pursuant to its removables liens on such material located at the aforementioned property, and may proceed thereon at its own election.

5. . . . The Court ORDERS and AWARDS MEGA BUILDERS . . . to pay [ADP] the sum of TEN THOUSAND FOUR HUNDRED NINEY-TWO AND 60/00 DOLLARS ($10,492.60) for attorney's fees.

4

The trial court further ordered all remaining claims not addressed in the final judgment dismissed, thereby making the judgment final and appealable.[2]

## Standard of Review

ADP filed a combined traditional and no-evidence motion for summary judgment. On its own claims for breach of contract, sworn account, judicial foreclosure of liens, and attorney's fees, ADP sought a traditional summary judgment. *See* TEX. R. CIV. P. 166a(c). On Mega Builders' counterclaim for breach of contract, ADP sought a no-evidence summary judgment. *See* TEX. R. CIV. P. 166a(i). We review the trial court's grant of summary judgment de novo, and we apply the standard of review appropriate for each type of summary judgment motion. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997) (explaining

---

[2] The record indicates that, at the time the trial court rendered its final judgment, Mega Builders' counterclaims for breach of implied warranties and declaratory judgment were still pending. ADP did not move for summary judgment on those counterclaims, and the record does not indicate that Mega Builders non-suited or otherwise abandoned them. Nevertheless, the parties do not dispute the finality of the trial court's judgment for purposes of appeal. The judgment expressly states that ADP prevails and Mega Builders takes nothing; that all claims not addressed in the judgment are dismissed; and that the judgment is final, disposes of all claims and all parties, and is appealable. *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (per curiam); *see also Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) (stating that order or judgment entered before conventional trial on the merits is final for purposes of appeal if it actually disposes of every pending claim and party or if it states "with unmistakable clarity" that it finally disposes of all claims and parties). Mega Builders has not raised an issue challenging the trial court's dismissal of its other counterclaims in the final judgment.

traditional standard); *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (explaining no-evidence standard).

**Traditional Summary Judgment on ADP's Claims**

Mega Builders and Mega Texas Realty first challenge the trial court's traditional summary judgment on ADP's claims for (1) breach of contract, (2) sworn account, (3) judicial foreclosure of liens, and (4) attorney's fees.

Under the traditional-summary-judgment standard, ADP had the burden to show that no genuine issue of material fact existed and that it was entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). Summary judgment for ADP, the plaintiff here, was proper if ADP conclusively established each element of its causes of action. Unless ADP conclusively established its causes of action, Mega Builders and Mega Texas Realty had "no burden to respond to [the] summary judgment motion." *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000); *see also Rizkallah v. Conner*, 952 S.W.2d 580, 582−83 (Tex. App.—Houston [1st Dist.] 1997, no writ) (holding that lack of response by nonmovant "does not supply by default the summary judgment proof necessary to establish the movant's right to summary judgment") (citing *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993)).

6

However, "a party who fails to expressly present to the trial court any written response in opposition to a motion for summary judgment waives the right to raise any arguments or issues post-judgment." *Unifund CCR Partners v. Weaver*, 262 S.W.3d 796, 797 (Tex. 2008). Because a motion for summary judgment must stand on its own merit, Mega Builders and Mega Realty—even without filing a response to all of ADP's summary judgment allegations in the trial court—still may argue on appeal that ADP's summary judgment proof was insufficient as a matter of law. *See Grace v. Titanium Electrode Prods., Inc.*, 227 S.W.3d 293, 297 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (stating that nonmovant may complain about insufficiency of movant's summary judgment proof on appeal even if nonmovant did not file response to motion); *Rizkallah*, 952 S.W.2d at 582−83 (same); *Jones v. Legal Copy, Inc.*, 846 S.W.2d 922, 924 (Tex. App.—Houston [1st Dist.] 1993, no writ) (same). We take as true all evidence favorable to Mega Builders and Mega Texas Realty, the nonmovants, and indulge every reasonable inference in their favor. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex. 1985).

## A.    Breach of Contract

The elements of ADP's breach of contract claim are: (1) the existence of a valid contract; (2) ADP's performance or tendered performance; (3) Mega Builders' breach of the contract; and (4) damages sustained by ADP as a result of the breach. *See Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.—

7

Houston [1st Dist.] 1997, no writ). The parties do not dispute that a valid contract existed for the manufacture and purchase of doors and related hardware, that ADP delivered doors and hardware to Mega Builders, that ADP made some repairs to the doors, and that Mega Builders did not pay the total contract price. The parties' only disagreement is regarding whether ADP's doors complied with the contract specifications. Thus, we consider the performance element of ADP's contract claim. ADP argues that it conclusively demonstrated the absence of a fact issue regarding its performance. Mega Builders argues that a material fact issue existed as to whether ADP delivered defective doors and Mega Builders therefore was relieved of its obligation to pay the full contract price. We agree with Mega Builders that a fact issue precluded summary judgment on ADP's contract claim.

### 1.    ADP's summary judgment motion and evidence

Regarding performance, ADP argued that it conclusively established its compliance with the contract by delivery of the contracted-for materials. The traditional summary judgment motion stated:

> ADP performed its obligations under the contract, delivering conforming goods and making repairs requested (and accepted) by MEGA BUILDERS. MEGA BUILDERS has never claimed, nor has it produced any evidence, that ADP failed to deliver the materials ordered under the contract. Upon hearing MEGA BUILDERS' proffered excuse for failure to pay the invoices, a private investigator was dispatched to [the hotel] and confirmed that there were no apparent defects with the doors. Furthermore, [the hotel's] quality assurance inspection made no mention of defective doors. Notwithstanding the ADP-MEGA BUILDERS contract terms, MEGA

8

BUILDERS promised to pay outstanding invoices upon a favorable [hotel] inspection. Nonetheless, no further payments have been remitted.

ADP supported these statements with (1) a verification from its president that the facts stated in ADP's original petition were true and correct, (2) a "Detail Aged Trial Balance" sheet showing the amounts ADP invoiced to Mega Builders and the balance due on the invoices, (3) email communications between representatives of ADP and Mega Builders related to the repair needs for the doors and ADP's demand for payment from Mega Builders, (4) a private investigator's report of an on-site investigation of the doors, and (5) the hotel's quality assurance report addressing the conditions of the property.

### 2. Mega Builders' summary judgment response and evidence

Mega Builders' response on the issue of ADP's performance alleged that Mega Builders was justified in withholding the balance of the contract price because ADP failed to perform under the contract by delivering "non-conforming" doors. Specifically, regarding performance, Mega Builders' response stated:

> [Mega Builders] sent the specifications and shop drawings, including showing where to drill the holes in the doors to install the locks, to [ADP] for its review and compliance. . . . [The] template [was not] followed by [ADP] as directed by [Mega Builders]. . . . [ADP] was notified and it sent out its representatives to correct the holes as directed by the template. . . . Because the original holes [ADP] drilled and the subsequent holes drilled by [ADP] to fit the template[ ] are right next to each other, with time and use of the doors[,] including[ ] the opening and shutting of the doors, this has caused the holes which are side by side to become one larger hole causing the locks on the

9

doors to shake, move and loosen. The result is that the sensitive electronic locks malfunction and will not operate properly to allow for the room doors to open and close and lock as required.

Mega Builders supported these statements with the affidavit of its president, Dhananjay Mody, averring that the doors were non-conforming for the reasons stated in the response. Attached to Mody's affidavit were copies of (1) the template provided to ADP for drilling the holes in the doors, (2) documents purported to be invoices from Mega Builders' locksmiths and painter showing the costs incurred by Mega Builders to repair or replace the defective doors, and (3) the same email communications attached to ADP's summary judgment motion.

ADP argues that Mody's affidavit and its attachments are not competent summary judgment evidence. In the trial court, ADP objected that the affidavit was conclusory because Mody's averments regarding the repair and replacement costs incurred by Mega Builders were not supported by documentary evidence (e.g., photographs, bids, invoices, cancelled checks, payment drafts, or receipts) showing that the doors delivered by ADP were non-conforming and that Mega Builders had incurred, or would incur, replacement costs. ADP renews those objections in this Court and also objects for the first time on appeal that the attachments to Mody's affidavit were not properly authenticated. However, we do not reach the competency of Mody's affidavit or the admissibility of its attachments in passing upon the trial court's traditional summary judgment because, for reasons discussed

10

below, we conclude that ADP's own summary judgment evidence does not constitute conclusive proof of ADP's performance under the contract. We therefore reserve the competency and admissibility issues for our discussion of other claims.

### 3. The fact issue regarding ADP's performance

The law requires ADP's motion for traditional summary judgment to stand on its own merit. *See Grace*, 227 S.W.3d at 297; *Rizkallah*, 952 S.W.2d at 582−83; *Jones*, 846 S.W.2d at 924. Viewed in the light most favorable to Mega Builders, the evidence relevant to the performance issue and attached to ADP's summary judgment motion does not entitle ADP to judgment as a matter of law.

We begin with the emails attached to ADP's summary judgment motion, which are communications between representatives of ADP and Mega Builders related to the repair of the doors and ADP's demand for payment. ADP does not dispute that it was contractually obligated to drill holes for the installation of locks or that Mega Builders provided a template for the proper placement of the holes. That there was a problem with the holes ADP drilled is established by the emails. In the first email, Mody, presumably in response to a payment demand from ADP, informed Luis Castillo, the ADP representative, that Mega Builders would "release some funds." Mody explained in the same email that Best Western had inspected the hotel property: "If inspection fails on doors, frames, hardware you supply, then we have problem otherwise we release the full funds." Fourteen days later, Castillo

11

wrote to inquire why the "full funds" had not been released. Mody responded that Mega Builders had replaced thirty-five doors and asked, "[W]ho is going to pay for all this mess?" The parties exchanged five more emails regarding the repair of the doors and Mega Builders' obligation to pay. This email from Mody to Castillo complaining about ADP's work is the parties' final communication:

From:
To:
Subject: RE: Best Western
Date: Thu, 29 Oct 2009 09:32:26 -0500

let me know how you will replace by doors.

You supply doors
then
we spray paint the doors
we install the doors
we call the electronics automatic locks company to install the hardware from Chicago..
then
we had the problems of locks punched holes the template holes is provided by the company in advance.
you came in to repair, that's doesn't work.

all this scope of the works is done in the recent months. not overnight.

The repairs of the doors represents the poor of quality of my Bestwestern property.

thanks

dj

Contrary to ADP's assertion, these emails do not conclusively establish that ADP performed under the contract by delivering the doors and by "making repairs requested (and accepted) by" Mega Builders.

Perhaps recognizing that the emails themselves were problematic, ADP argued in its reply to Mega Builders' summary judgment response that the trial court should disregard the emails to the extent they raised an issue of fact as to

12

whether the doors were deficient because the doors passed inspection by Best Western.[3] ADP has provided this Court with only a general citation to the entire quality assurance report. ADP has not provided any substantive discussion of the report or made any effort to explain how it demonstrates ADP's performance as a matter of law. After independently reviewing the report, we disagree that it constitutes conclusive proof that ADP either delivered conforming doors or adequately repaired the doors that were non-conforming.

Although the report states that the hotel property complied with "all locking device requirements," the inspector noted at least four instances of damage to or "poor workmanship in repair" of doors. The doors described as damaged or suffering from "poor workmanship in repair" included the doors to guest rooms 320 and 423, the women's public restroom on the first floor, and a meeting room. Regarding the "poor workmanship" on the door to guest room 423, the inspector noted in parenthesis that the "wrong shade of paint [was] used for touch up." But with respect to the other three doors, the inspector did not explain the "poor workmanship" or damage observed. ADP's summary judgment motion and

---

[3]     To the extent ADP argues that the email promising to release funds upon passing the Best Western inspection was a new contract, we reject that proposition as a ground for summary judgment in this case. ADP did not plead it or state it as a basis for summary judgment in its motion. ADP did not raise the issue until it filed its reply to Mega Builders' summary judgment response.

13

evidence do not address these discrepancies or state that the doors at issue were not doors manufactured or repaired by ADP.

Neither is the private investigator's report—entitled "Asset & Liability Investigation, Site Visit"—affirmative evidence that ADP performed under the contract by delivering the doors and "making repairs requested (and accepted) by" Mega Builders. The report states in pertinent part:

> I met with Mr. Manish the manager of the Best Western Columbus Inn & Suites. I introduced myself and stated the purpose of my visit. I asked to speak with Mr. Dhananjay Mody aka DJ. Mr. Manish stated, "DJ is not here; . . . ." I advised Mr. Manish that I needed to take some pictures of doors that were said to be nonfunctional. Mr. Manish did not understand so I clarified by saying "doors that did not close or open properly or that were hung wrong." Mr. Manish accompanied me while I took several pictures on the ground floor. He stated that he did not know of any door(s) that were not operating properly. We took the elevator to the 4th floor and worked down to the 2nd floor where he said that there was a door to a storage area that may not be locking properly. I took a picture of the door. I asked Mr. Manish if he knew of any problems with the construction at the facility. He stated "not that I know of."

First, the investigator noted at least one instance of a door that was not locking properly—a "storage area" door. Again ADP's summary judgment motion and evidence do not address this discrepancy or state that the storage door at issue was not a door manufactured by ADP. Second, regarding the other doors on the property, the report does not establish that the investigator asked the manager whether the locks on any of the doors were not functional because of the misplaced holes. The only question the investigator reported having asked was whether the

14

manager knew of any doors that "did not close or open properly or that were hung wrong." Third, the report does not establish that the manager was a person with knowledge of the contract specifications, the locking mechanisms, or the problems relayed by Mody to Castillo in the emails discussed above.

Under the applicable standard of review, we conclude that a genuine issue of fact exists as to whether ADP performed under the contract. Thus, the trial court erred in granting traditional summary judgment on ADP's breach of contract claim.

## B.     Sworn Account

We next consider whether ADP's sworn account claim can sustain the trial court's judgment. Mega Builders contends that the summary judgment on ADP's counterclaim cannot be affirmed because Mega Builders filed a "sworn denial stating that the account was not just or true and that all just and lawful offsets had not been allowed and that ADP failed to perform the work in a good and workmanlike manner causing the locks to malfunction and resulting in damages claimed as an offset."

A suit on a sworn account is "a procedural tool that limits the evidence necessary to establish a prima facie right to recovery on certain types of accounts." *Williams v. Unifund CCR Partners Assignee of Citibank*, 264 S.W.3d 231, 234 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *see* TEX. R. CIV. P. 185. In order to

15

establish sufficient evidence to support a prima facie case in its suit on a sworn account, as well as summary disposition of the case, ADP must have strictly adhered to rule 185, which governs suits on sworn accounts. *See* TEX. R. CIV. P. 185; *Powers v. Adams*, 2 S.W.3d 496, 498 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Andrews v. E. Tex. Med. Ctr.-Athens*, 885 S.W.2d 264, 267 (Tex. App.—Tyler 1994, no writ). "Rule 185 is not a rule of substantive law. Rather, it is a rule of procedure regarding the evidence necessary to establish a prima facie right of recovery." *Panditi v. Apostle*, 180 S.W.3d 924, 926 (Tex. App.—Dallas 2006, no pet.) (citations omitted). Rule 185 defines an open account to include "any claim for a liquidated money demand based upon written contract . . . , or [ ] for . . . labor done or labor or materials furnished." TEX. R. CIV. P. 185. Under this rule, a plaintiff's petition on a sworn account must contain "a systematic, itemized statement of the goods or services sold, . . . reveal offsets made to the account, and [ ] be supported by an affidavit stating the claim is within the affiant's knowledge, and that it is 'just and true.'" *Andrews*, 885 S.W.2d at 267; *see also Panditi*, 180 S.W.3d at 926 (stating requirements for sworn account petition and accompanying affidavit, including requirement that account "show with reasonable certainty the name, date, and charge for each item, and provide specifics or details as to how the figures were arrived at"); *Nguyen v. Short, How, Frels & Heitz, P.C.*, 108 S.W.3d 558, 562 (Tex. App.—Dallas 2003, pet denied) (same). "General statements . . .

16

without description of specific items are insufficient to comply with Rule 185." *Jones v. Ben Maines Air Conditioning, Inc.*, 621 S.W.2d 437, 439 (Tex. App.— Texarkana 1981, no writ). If there is a deficiency in the plaintiff's sworn account, the account will not constitute prima facie evidence of the debt. *See Enernational Corp. v. Exploitation Eng'rs, Inc.*, 705 S.W.2d 749, 750 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

In the same context, the defendant's denial must be written and supported by an affidavit denying the account. *See* TEX. R. CIV. P. 93(10), 185; *Andrews,* 885 S.W.2d at 267. When a defendant files a sworn denial of the plaintiff's account in the form required by rule 185, the evidentiary effect of the itemized account is destroyed and the plaintiff is forced to put on proof of its claim. *See Roberts Express, Inc. v. Expert Transp., Inc.,* 842 S.W.2d 766, 770 (Tex. App.—Dallas 1992, no writ); *Thorp v. Adair & Myers,* 809 S.W.2d 306, 307 (Tex. App.— Houston [14th Dist.] 1991, no writ); *United Bus. Machs. v. Entm't Mktg., Inc.,* 792 S.W.2d 262, 263−64 (Tex. App.—Houston [1st Dist.] 1990, no writ) (finding that even when defendant verifies its sworn denial to suit on sworn account, "[a] plaintiff can properly recover summary judgment . . . if it files legal and competent summary judgment evidence establishing the validity of its claim as a matter of law."). On the other hand, when a defendant fails to file a verified denial to a sworn account, the sworn account is received as prima facie evidence of the debt

17

and the plaintiff is entitled to summary judgment on the pleadings. *See Andrews,* 885 S.W.2d at 267 (concluding that defendant who does not properly file written denial under oath will not be permitted to dispute the receipt of services or correctness of charges); *Tex. Dep't of Corrs. v. Sisters of St. Francis of St. Jude Hosp.,* 753 S.W.2d 523, 524 (Tex. App.—Houston [1st Dist.] 1988, no writ); *Enernational Corp.,* 705 S.W.2d at 750. In other words, a defendant's noncompliance with rule 185 conclusively establishes that there is no defense to the suit on the sworn account. *See Enernational Corp.,* 705 S.W.2d at 750.

ADP's live petition did not comply with the requirements of rule 185 because, although ADP's president verified that the account was within his knowledge and was "just and true," ADP did not include any systematic or itemized record of the parties' transaction. Thus, ADP's pleadings did not constitute prima facie evidence of Mega Builders' debt. *See Panditi*, 180 S.W.3d at 927 ("If there is a deficiency in the plaintiff's sworn account, the account will not constitute prima facie evidence of the debt."); *see also Enernational Corp.*, 705 S.W.2d at 750. The only itemized statement of the amounts owed by Mega Builders was attached to ADP's summary judgment motion, not to any of its petitions. We decline to hold that ADP's summary judgment evidence cured the deficiency in its sworn account petition. This Court and others have determined that a sworn denial of an account in a response to a summary judgment motion

18

does not satisfy the strict requirements of rule 185. *See Cooper v. Scott Irrigation Constr., Inc.*, 838 S.W.2d 743, 746 (Tex. App.—El Paso 1992, no writ); *Rush v. Montgomery Ward*, 757 S.W.2d 521, 523−24 (Tex. App.—Houston [14th Dist.] 1988, writ denied); *Bavishi v. Sterling Air Conditioning, Inc.*, No. 01-10-00610-CV, 2011 WL 3525417, at *7 (Tex. App.—Houston [1st Dist.] Aug. 11, 2011, no pet.) (mem. op.). The same conclusion applies to deficiencies in a plaintiff's sworn account—they cannot be cured in a summary judgment motion.

Even had ADP complied with the requirements of rule 185, it would not have been entitled to summary judgment on its sworn account claim. Mega Builders filed a verified answer, putting ADP to proof its claim. And ADP does not challenge the sufficiency of Mega Builders' verified answer denying the account. As the plaintiff in a suit on an account, ADP was required to prove that all lawful offsets, payments, and credits had been applied to its account with Mega Builders. *See Panditi*, 180 S.W.3d at 926. Our conclusion that a genuine issue of fact exists as to whether ADP performed under the contract precludes a holding that ADP established as a matter of law that all lawful offsets, payments, and credits had been applied to the account. We hold instead that the trial court erred in granting traditional summary judgment on ADP's sworn account claim.

**C.      Remedies**

Given our holding of error with respect to the traditional summary judgment in favor of ADP, it is not necessary for us to address the foreclosure and attorney's fees issues. Having failed to demonstrate its entitlement to summary judgment on either its breach of contract or sworn account claims, ADP was not entitled to summary judgment for foreclosure or attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(7), (8) (West 2008); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (holding that party must prevail and recover damages to be entitled to attorney's fees under section 38.001(8)).

**No-Evidence Summary Judgment on Mega Builders' Counterclaim**

Mega Builders also challenges the no-evidence summary judgment on its breach-of-contract counterclaim. Mega Builders' counterclaim rests on the same factual allegations as its defense to ADP's claims: ADP drilled holes for locks in the wrong location on sixty-six of the doors it manufactured; as a result, the locks installed on those doors did not function correctly; the problem was not resolved—but instead actually worsened—when ADP re-drilled the holes; and Mega Builders incurred repair and replacement costs. Our conclusion that a fact issue precluded summary judgment on ADP's contract claim does not dictate the same conclusion regarding the no-evidence summary judgment on Mega Builders' contract claim. We determined that ADP was not entitled to judgment as a matter

20

of law based on the insufficiency of its own summary judgment evidence, not as a result of any fact issue raised by Mega Builders. We have not resolved the issue of whether, in responding to ADP's no-evidence motion, Mega Builders presented evidence raising genuine fact issues on its own contract claim. We turn to that issue now.

ADP's no-evidence motion was properly granted if (1) ADP asserted that there was no evidence of one or more essential elements of the claim for which Mega Builders had the burden of proof at trial and (2) Mega Builders produced no summary judgment evidence raising a genuine issue of material fact on those elements. *See* TEX. R. CIV. P. 166a(i). Mega Builders was not obligated to marshal its proof, but it was required to present evidence raising genuine fact issues on the challenged elements. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

In moving for no-evidence summary judgment, ADP asserted that Mega Builders had no evidence of (1) breach on ADP's part, (2) performance or tendered performance on Mega Builders' part, or (3) damages. This satisfied ADP's initial burden, as stated in rule 166a(i). *See* TEX. R. CIV. P. 166a(i); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002); *Mathis v. RKL Design/Build*, 189 S.W.3d 839, 844 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Flameout Design & Fabrication*, 994 S.W.2d at 834. Accordingly, the burden shifted to

Mega Builders to provide some evidence, more than a scintilla, that raised a fact issue concerning whether ADP breached; Mega Builders performed, tendered performance, or was excused from performing; and Mega Builders sustained damages. The burden having shifted to Mega Builders, the trial court had a duty, pursuant to rule 166a(i), to grant ADP's no-evidence motion for summary judgment unless Mega Builders responded to that motion by producing more than a scintilla of evidence that raised a genuine issue of material fact on the three challenged elements. *See* TEX. R. CIV. P. 166a(i); *Sw. Elec. Power Co.*, 73 S.W.3d at 215; *Rueda v. Paschal*, 178 S.W.3d 107, 109 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

In support of its counterclaim, Mega Builders presented the affidavit of its president, Dhananjay Mody, and three attachments, which included copies of (1) the door template Mega Builders provided ADP, (2) invoices from Mega Builders' locksmiths and painter, and (3) the email correspondence between Mega Builders and ADP that was also attached to ADP's summary judgment motion. Mega Builders contends that the Mody affidavit and its attachments raised a fact issue as to each of the challenged elements of its counterclaim. But ADP argues that the trial court could not have considered Mega Builders' summary judgment evidence because the Mody affidavit was conclusory and its attachments were not properly

22

authenticated. The trial court did not rule on ADP's objections to Mega Builders' summary judgment evidence.

To preserve objections to the form of summary judgment evidence for appeal, a party must both make an objection in the trial court and obtain a ruling at or before the summary judgment hearing. *Vice v. Kasprzak*, 318 S.W.3d 1, 11 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see* TEX. R. APP. P. 33.1(a)(1); TEX. R. CIV. P. 166a(f). "[A] trial court's ruling on an objection to summary-judgment evidence is not implicit in its ruling on the motion for summary judgment." *Delfino v. Perry Homes*, 223 S.W.3d 32, 35 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Well Solutions, Inc. v. Stafford*, 32 S.W.3d 313, 317 (Tex. App.—San Antonio 2000, no pet.)). Objections to improper authentication are defects in form, which require a ruling for appellate review. *See* TEX. R. CIV. P. 166a(f); *Commint Technical Servs., Inc. v. Quickel*, 314 S.W.3d 646, 651 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding that objection that summary judgment evidence is not properly authenticated is objection to form); *Gomez v. Allstate Tex. Lloyds Ins. Co.*, 241 S.W.3d 196, 202 (Tex. App.—Fort Worth 2007, no pet.) (finding waiver when objection to authenticity of summary judgment evidence was raised for first time in motion for new trial); *Petro-Hunt, L.L.C. v. Wapiti Energy, L.L.C.*, No. 01-10-01030-CV, 2012 WL 761144, at *4 (Tex. App.—Houston [1st Dist.] Mar. 8, 2012, pet. denied) (mem. op.); *Petroleum*

23

*Analyzer Co. L.P. v. Olstowski*, No. 01-09-00076-CV, 2010 WL 2789016, at *20 (Tex. App.—Houston [1st Dist.] July 15, 2010, no pet.) (mem. op.). However, an objection that statements in an affidavit are conclusory is a defect of substance, which may be raised for the first time on appeal. *See Dodge v. Durdin*, 187 S.W.3d 523, 532 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Rizkallah*, 952 S.W.2d at 585); *Green v. Indus. Specialty Contractors*, 1 S.W.3d 126, 130 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

Because ADP did not secure a ruling on its objections to Mega Builders' summary judgment evidence, only its objections that assert a defect of substance are preserved. *See Vice*, 318 S.W.3d at 11. The only such objection is ADP's contention that Mody's affidavit was conclusory. ADP contends the affidavit was conclusory because Mody's conclusions that the doors were "non-conforming" and that Mega Builders would incur more than $44,000 in replacement costs were not supported by facts or other competent summary judgment evidence. The affidavit was conclusory if it stated "a conclusion without any explanation" or asked the factfinder to "take [Mody's] word for it." *Arkoma Basin Exp. Co. v. FMF Assocs. 1990-A Ltd.*, 249 S.W.3d 380, 389 (Tex. 2008); *see also Rizkallah*, 952 S.W.2d at 587 ("A conclusory statement is one that does not provide the underlying facts to support the conclusion."); Black's Law Dictionary 308 (9th ed. 2009) (defining "conclusory" as "[e]xpressing a factual inference without stating the underlying

24

facts on which the inference is based"). If the affidavit contained conclusory statements—statements that failed to provide the underlying facts to support the conclusion—it was not proper summary judgment evidence. *See Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 637 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *Dolcefino v. Randolph*, 19 S.W.3d 906, 925−27 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

Mody, as president of Mega Builders, made his affidavit on personal knowledge, as the person who "supervised the construction process[,] including the ordering and installation of doors." Regarding ADP's performance, Mody stated that ADP delivered sixty-six "non-conforming" doors. Contrary to ADP's assertions, Mody's affidavit demonstrates the factual basis for his conclusion that sixty-six of the doors provided by ADP did not conform to the contract specifications. Mody explained that Mega Builders sent ADP a template, a copy of which was attached to his affidavit, showing "where to drill the holes in the doors to install the locks." He described the defects in the doors, stating that, when the time came for installation of the locks, the lock supplier "discovered that the . . . template had not been followed by [ADP] as directed by [Mega Builders]"; "[t]he holes on the lock did not match the drilled holes." Mody stated that ADP was notified of the problem, and ADP "sent out its representatives to correct the holes as directed by the template." However, ADP "redrilled the holes in the doors close

25

to and next to the original holes after [the doors] had been installed. Because the original holes [ADP] drilled and the subsequent holes drilled by [ADP] to fit the template are right next to each other, with time and use of the doors[,] including[ ] the opening and shutting of the doors, this has caused the holes which are side by side to become one larger hole causing the locks on the doors to shake, move and loosen." He further explained, "The result is that the sensitive electronic locks malfunction and will not operate properly to allow for the room doors to open and close and lock as required." With respect to the statement that the doors were "non-conforming," we conclude that Mody's affidavit was not conclusory and was some evidence of the breach and performance elements of Mega Builders' contract counterclaim.

We need not decide whether Mody's statement regarding the cost to replace the allegedly "non-conforming" doors was conclusory. Mega Builders presented other evidence of damages to which ADP did not object. Specifically, Mody averred that Mega Builders spent $12,669 repairing doors in twenty-five guest rooms. Mega Builders attached to Mody's affidavit invoices from its locksmiths and painter showing the costs to repair some of the guest room doors. Viewed in the light most favorable to Mega Builders, the unobjected-to portions of Mody's affidavit and its attachments were some evidence of the damage element of Mega Builders' contract counterclaim.

26

Because Mega Builders presented some evidence as to each of the elements of its contract counterclaim challenged by ADP—breach, performance, and damages—the trial court's no-evidence summary judgment on that claim was improper.

## Conclusion

Having concluded that the trial court erred by (1) granting a traditional summary judgment on ADP's affirmative claims for breach of contract and sworn account and awarding ADP judicial foreclosure of its liens and attorney's fees and (2) granting a no-evidence summary judgment on Mega Builders' counterclaim, we sustain Mega Builders' issue on appeal. We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.


                                        Harvey Brown
                                        Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.